ARMANDO ROMERO ARROYO y OTROS, demandantes y recurrentes, *v.* ESTADO LIBRE ASOCIADO DE PUERTO RICO y OTROS, demandados y recurridos.

*Número:* RE-94-132          *Resuelto:* 7 de diciembre de 1995

*Víctor A. Vélez Cardona,* abogado de la parte recurrente; *Pedro A. Delgado Hernández, Procurador General, Carlos Lugo Fiol, Subprocurador General, y Aida Ileana Oquendo Graulau, Procuradora General Auxiliar,* abogados de El Pueblo.

## SENTENCIA

Nos corresponde resolver si erró el Tribunal Superior de Puerto Rico, Sala de Arecibo (Hon. Edna Abruña Rodríguez, Juez) al declarar con lugar una solicitud de desestimación según la Regla 39.2(c) de Procedimiento Civil, 32 L.P.R.A. Ap. III, fundándose ésta en que de acuerdo con los hechos hasta ese momento probados, la parte demandante

no tenía derecho a la concesión de remedio alguno, puesto que no se demostró negligencia alguna por parte de Fiscalía o del Secretario de Justicia ni la relación causal entre la negligencia alegada y los daños sufridos. Por los fundamentos más adelante expuestos, confirmamos la sentencia recurrida.

I

Se trata aquí de una demanda civil por arresto ilegal y daños y perjuicios instada por los esposos Armando Romero Arroyo y Virginia Martínez Deliz, contra el Estado Libre Asociado de Puerto Rico (en adelante E.L.A.), el Secretario de Justicia y Blanca I. Rivera. Dicho matrimonio fue acusado y posteriormente exonerado de unos actos delictivos relacionados con la custodia de un niño entregado a ellos por su madre biológica, Blanca I. Rivera.

El caso de autos ha estado antes ante la consideración de este Tribunal en otra etapa de los procedimientos. En *Romero Arroyo v. E.L.A.*, 127 D.P.R. 724 (1991), la controversia ante nos era si procedía una solicitud de desestimación presentada por el Estado para invocar inmunidad y falta de notificación previa al Secretario de Justicia. Allí resolvimos que no era necesario cumplir con el requisito de notificación al Secretario de Justicia, en virtud de las circunstancias del caso; en particular, que quien mejor y más completo conocimiento tiene de lo sucedido es el propio codemandado E.L.A. a través de su Departamento de Justicia. Asimismo resolvimos que los representantes del Ministerio Público y el Secretario de Justicia tienen inmunidad en cuanto a negligencia en el curso del procesamiento criminal, mas el Estado no goza de tal inmunidad puesto que ha renunciado a ésta en caso de actos negligentes de sus funcionarios en el curso de sus gestiones oficiales.

Devuelto el caso para la continuación de los procedimientos, el foro de instancia celebró la vista en su fondo.(¹) Desfilada la prueba por la parte demandante, el representante legal del E.L.A. solicitó la desestimación de la acción según el inciso (c) de la Regla 39.2 de Procedimiento Civil, *supra*, para alegar que, de acuerdo con los hechos hasta ese momento probados, la parte demandante no tenía derecho a la concesión de remedio alguno, puesto que no se demostró negligencia alguna por parte de Fiscalía o del Secretario de Justicia, ni la relación causal entre la negligencia alegada y los daños sufridos. Luego de escuchados los argumentos de las partes, el foro de instancia declaró con lugar la solicitud de desestimación y ordenó la continuación de los procedimientos en cuanto a la codemandada Blanca Iris Rivera. En esos momentos, la parte demandante procedió a desistir de la demanda en cuanto a dicha codemandada. Así, el tribunal de instancia dictó la sentencia que desestimó la demanda.

No conforme, acude ante nos la parte demandante y solicita la revocación de la sentencia recurrida. En síntesis, formula los señalamientos de error siguientes:

1. Erró el Honorable Tribunal de Instancia en la apreciación de la evidencia especialmente considerando que se trataba de una Moción de Desestimación.
2. Erró el Honorable Tribunal de Instancia al dictar sentencia en violación a los parámetros y a la jurisprudencia que le exigía prudencia y ponderación al momento de dictar dicha sentencia. Solicitud de revisión, pág. 5.

Expedimos el recurso y, con el beneficio de la comparecencia de las partes, resolvemos.

---

(¹) El caso fue trasladado a la Sala de Arecibo del Tribunal Superior de Puerto Rico, dada la inhibición de los jueces de la Sala de Utuado, donde originalmente se encontraba el caso.

## II

Ambos señalamientos plantean la misma cuestión y se reducen a alegar que el tribunal de instancia no debió dictar sentencia en esta etapa de los procedimientos, sino que procedía ordenar a la parte demandada que pasara su prueba. No le asiste la razón a la parte demandante recurrente. Veamos.

El inciso (c) de la Regla 39.2 de Procedimiento Civil, *supra*, provee, en lo pertinente, que:

> Después que el demandante haya terminado la presentación de su prueba, el demandado, sin renunciar al derecho de ofrecer prueba en el caso de que la moción sea declarada sin lugar, podrá solicitar la desestimación, fundándose en que bajo los hechos hasta ese momento probados y la ley, el demandante no tiene derecho a la concesión de remedio alguno. El tribunal podrá entonces determinar los hechos y dictar sentencia contra el demandante, o podrá negarse a dictar sentencia hasta que toda la prueba haya sido presentada.

Al interpretar esta regla hemos indicado que cuando se presenta una moción de desestimación al amparo de ésta, luego de presentada la prueba del demandante el tribunal está autorizado en esa etapa a aquilatar la prueba presentada y a formular su apreciación de los hechos, según la credibilidad que le haya merecido la evidencia. Pero esa facultad debe ejercitarse después de un escrutinio sereno y cuidadoso de la prueba; en caso de duda, es preferible requerir al demandado para que presente su caso. *Roselló Cruz v. García*, 116 D.P.R. 511, 520 (1985); *Colombani v. Gob. Municipal de Bayamón*, 100 D.P.R. 120, 121–122 (1971); *Irizarry v. A.F.F.*, 93 D.P.R. 416, 420–421 (1966).

Tomando en consideración lo antes expuesto, evaluemos si de acuerdo con los hechos hasta este momento probados por la parte demandante, procedía que se concediera la desestimación solicitada. Para ello hay que resaltar que, según antes indicáramos, dicha solicitud estuvo fundamentada en que no se demostró que el Fiscal o el Secretario de

Justicia hubieran actuado con negligencia ni el nexo causal. Veamos en qué consistió la prueba desfilada por la parte demandante.

En primer lugar, se admitió la siguiente prueba documental por estipulación de las partes:

1. Recorte del periódico El Vocero de fecha 13 de diciembre de 1985, el cual fue admitido, *no* como constitutivo de su contenido de la veracidad de los hechos, sino a los únicos efectos de que dicho artículo fue publicado.[2]

2. Acta de Nacimiento del menor Ángel Luis Romero Rivera. ...

3. Acta de Nacimiento del menor Ángel Luis Rodríguez Rivera.

4. Sentencia de impugnación y filiación caso civil 86–641. ...

5. Denuncia Artículo 42 de la Ley de Registro Demográfico. ...

6. Denuncia Artículo 160 del Código Penal. ...

7. Autorización para someter caso a magistrado.

8. Carta de la Sra. Elizabeth García del 20 de agosto de 1985. ... Informe del Procurador General, págs. 15–16.

En segundo lugar, las partes estipularon los hechos siguientes:

1. Doña Virginia Martínez Deliz y su esposo Armando Romero Arroyo, fueron denunciados y acusados por delitos de robo de menores e infracción al artículo 42 de la Ley de Registro Demográfico.

2. Los esposos Romero-Martínez fueron extraditados a Puerto Rico desde el estado de Nueva York, mediante orden expedida por un Tribunal en Puerto Rico.

3. No hubo determinación de causa probable para acusar a los esposos Romero-Martínez por el delito de robo de menores.

4. Los esposos Romero-Martínez resultaron absueltos del cargo de infracción al artículo 42 de la Ley de Registro Demográfico.

---

[2] De éste surge que la situación fue objeto de una conferencia de prensa por parte del Secretario de Justicia, Lcdo. Héctor Rivera Cruz, informando éste que la investigación culminó con el arresto y la extradición de los esposos Romero-Martínez, y que al asunto se le dio carácter prioritario ya que el Secretario de Justicia interesaba que la querellante estuviera junto a su hijo durante la época navideña.

5. El padre del menor lo es el señor Bautista Rodríguez Irizarry.

Además, se sentaron a declarar ambos demandantes, esto es, Armando Romero Arroyo y Virginia Martínez Deliz.

En síntesis, la codemandante Martínez Deliz declaró que era residente de Lares y estaba casada con Armando Romero Arroyo desde hace veintidós (22) años, con quien no ha tenido hijos; que Blanca Iris Rivera es su sobrina, quien quedó huérfana a los cuatro (4) años de edad y su mamá, abuela de Blanca, la crió. Declaró, además, que Blanca temía que su abuela se enterara de su embarazo, por lo que le dijo a ésta que tenía un tumor. Blanca le indicó a la codemandante que cuando diera a luz dejaría el niño en el hospital, a lo que ella le contestó que se lo entregara; que la llevaría a las citas médicas, y hasta la llevó al hospital cuando le fueron a realizar la operación de cesárea. En el hospital, Blanca le indicó al médico que le había dado el niño a su tía porque no lo podía tener.

Continuó declarando que cuando dieron de alta a Blanca la buscó acompañada de su esposo y su hija mayor, habida en su primer matrimonio; que luego su esposo y Blanca fueron a inscribir el niño, y ella los esperó en la sala de espera con el bebé y su hija mayor; que llevó al bebé a su casa y luego llevó a Blanca a la casa de su madre, dejando al niño al cuidado de su hija mayor. Dijo, además, que llevaba al niño al pueblo y allí se encontraba con Blanca para que ésta lo viera; que el bebé desarrolló unas ronchas en el área de los glúteos, lo cual fue diagnosticado como una alergia, pero los medicamentos recetados no le curaron; que, ante esto, decidió llevar al niño a Estados Unidos para que lo curaran, a lo que Blanca consintió, por lo cual, antes de irse a Estados Unidos, llevó el bebé a la casa de su mamá (abuela de Blanca), ya que le había dicho a ésta que lo había adoptado; que su mamá le indicó si tenía algo que decirle, a lo que ella procede a consultar con

Blanca, tras lo cual le informó a su mamá que el bebé era de Blanca. Indicó, además, que Blanca incluso le había comprado una maleta al niño, quien contaba con alrededor de ocho (8) meses al ser trasladado a Estados Unidos; que vendió sus muebles y se marchó a Estados Unidos a vivir en el apartamento de su cuñado.

La señora Martínez también declaró que llevó al niño a un médico, quien lo curó. Luego se mudaron a su propio apartamento y compraron muebles; le escribió a Blanca dos (2) cartas a la dirección de su tía, y ésta no contestó; no la llamó ya que no tenía teléfono. Conoció al padre del bebé, quien se llama Bautista; éste tiene hijos en la misma área donde ella vivía en Estados Unidos y la visitó también a ella, al igual que el padre de éste. Continuó declarando que: cuando el niño tenía alrededor de dieciocho (18) meses, la arrestaron por alegado robo de menores; arrestaron a su esposo en su trabajo y luego a ella en su apartamento; los arrestó el Fiscal Acevedo en un operativo con varios policías y la llevaron al ayuntamiento; allí el Fiscal le quitó el niño, la encerraron y, llegada la noche, la llevaron a una cárcel donde pernoctó. A la mañana siguiente la llevaron a declarar ante un juez, al igual que a su esposo; sin embargo, se negaron a declarar en Estados Unidos, ya que querían que el caso se resolviera en Puerto Rico. Esa tarde le entregaron al niño y tomaron un avión hacia Puerto Rico debido a que se ordenó su extradición; al llegar a Puerto Rico, el Fiscal le quitó nuevamente el niño y le indicó que éste iría hacia el Departamento de Servicios Sociales.

Continuó declarando que los llevaron ante una juez, pero que ellos se negaron a declarar puesto que no estaban acompañados de un abogado, el cual ya había sido contactado a través de la hermana de su esposo. Narró que la llevaron a la Cárcel de Vega Alta, donde la registraron en su partes íntimas y allí estuvo hasta el día siguiente; que en Estados Unidos dejaron todos sus muebles, los cuales le fueron robados y destrozados. Además, declaró que nadie del Gobierno de Puerto Rico se comunicó con ella a Estados Unidos; que Bautista sabía su dirección y teléfono y, des

pués de visitarla, la llamó en varias ocasiones e incluso le escribió una carta para indicarle que tuviera cuidado, que Blanca le iba a quitar el niño y que los había denunciado a dichos efectos; que Blanca tenía su teléfono y dirección, y que se los había dado al Fiscal. Afirmó que si la hubieran citado, ella hubiera venido a Puerto Rico. Expresó que continuó viendo el niño pero hace alrededor de quince (15) días que éste no la ha llamado y ella supone que es porque Blanca no se lo permite. El niño ahora tiene nueve (9) años de edad.

Durante el contrainterrogatorio, la señora Martínez declaró que su mamá, la abuela de Blanca, era estricta y no quería que sus hijas se involucraran con hombres casados; que Blanca temía que su abuela se enterara de su embarazo, ya que su abuela estaba enferma.

A preguntas de la juez indicó que: en la actualidad Blanca vive con el niño en una casa propia y no va a visitar a su abuela; ha continuado viendo el niño en la casa de Blanca cada quince (15) días, y su esposo la acompaña; no obstante, hace alrededor de quince (15) días que Blanca no quiere que vaya a ver al niño.

Por último, se sentó a declarar el codemandante Romero Arroyo, de sesenta y dos (62) años de edad, quien testificó a los mismos efectos que su esposa, reiterando lo que ella declaró, en particular, que Blanca les entregó el niño y ésta consintió a que se lo llevaran a Estados Unidos, así como declaró sobre todo el proceso de arresto, encarcelamiento, extradición, procesamiento en Puerto Rico hasta su exoneración. Añadió que: Blanca y él registraron al niño mientras su esposa los esperaba en la sala de espera; a preguntas de un funcionario del Registro Demográfico, Blanca indicó que él era el padre del niño y ambos firmaron. Añadió que estando en Estados Unidos, consiguió trabajo como supervisor de un casino en Atlantic City, New Jersey, donde ganaba cuatrocientos sesenta dólares ($460) semanales; trabajó allí por alrededor de siete (7) meses, hasta que los arrestaron; una vez los arrestaron, los

llevaron a una oficina y el Fiscal puertorriqueño fue el intérprete allí, así como en el tribunal; perdió su empleo y todas sus pertenencias en su apartamento en Estados Unidos. Dijo que ha continuado viendo al niño. Admitió que no es el padre del niño pero lo inscribió en el Registro Demográfico, ya que Blanca así se lo había solicitado. Reiteró que Bautista lo visitó en su apartamento en Estados Unidos. Declaró, además, que Bautista sabía su teléfono y dirección, así como también lo sabía Blanca; ninguna agencia del Gobierno de Puerto Rico les escribió para preguntarles sobre el niño ni los llamaron para que se personaran en Puerto Rico; si los hubieran llamado, habrían venido.

A base de la prueba desfilada por la parte demandante, lo dispuesto en la Regla 39.2(c) de Procedimiento Civil, *supra*, así como la jurisprudencia interpretativa de dicha regla, concluimos que el foro de instancia actuó correctamente al desestimar la demanda.

De un escrutinio sereno y cuidadoso de la prueba desfilada se desprende que hay insuficiencia de prueba en torno a la negligencia del Ministerio Público y del Secretario de Justicia durante la investigación realizada por el Departamento de Justicia. De una parte, los demandantes han indicado que dicho Departamento no se comunicó con ellos, sin embargo *no aportan prueba alguna sobre la investigación que realizó dicho Departamento que dio base a la presentación de cargos. De ahí que la parte demandante no colocó al tribunal de instancia en condiciones de determinar si efectivamente dicho Departamento incurrió en negligencia en la investigación del asunto*, correspondiéndole a los demandantes el peso de la prueba para demostrar la negligencia y el nexo causal entre ésta y los daños sufridos. Véanse, entre otros: *Ortiz Torres v. K & A Developers, Inc.*, 136 D.P.R. 192 (1994); *Reece Corp. v. Ariela, Inc.*, 122 D.P.R. 270, 286 (1988); *Pérez Escolar v. Collado*, 90 D.P.R. 806 (1964). Véase, además, Regla 10 de Evidencia, 32 L.P.R.A. Ap. IV.

Por otro lado, nótese que se trataba de un cargo de robo de menores, por lo que existe la preocupación real de si se pone en alerta a unos sospechosos podría provocar su huida. Nótese, además, que según el propio testimonio de la codemandante Virginia Martínez Deliz, a través de una carta que le enviara Bautista, padre biológico del niño, *ésta supo de que habían sido denunciados, mas nada hizo para aclarar el asunto ante las autoridades pertinentes.* Esto contrasta con el testimonio de ambos demandantes en cuanto a que si un agente los hubiera llamado, hubieran venido a Puerto Rico. Por otro lado, del testimonio de ambos demandantes surge que alegadamente tenían autorización para llevarse al niño a Estados Unidos para curarle de una afección, mas luego de haber sido curado *permanecieron en Estados Unidos.* Asimismo del testimonio del codemandante Armando Romero Arroyo se desprende su admisión en cuanto a que no es el padre del niño, mas lo inscribió como tal en el Registro Demográfico a sabiendas de la falsedad de tal hecho.

Ciertamente; de este conjunto de hechos es forzoso concluir que procede la desestimación de la demanda, según correctamente lo decretara el tribunal de instancia. Recordemos que, en esa etapa de los procedimientos, dicho tribunal estaba autorizado a aquilatar la prueba presentada y formular su apreciación de los hechos. No encontramos aquí que el tribunal de instancia haya actuado con pasión, prejuicio o parcialidad ni que cometió error manifiesto en la apreciación de la prueba, por lo que no intervendremos con su apreciación. Véanse: *La Costa Sampedro v. La Costa Bolívar*, 112 D.P.R. 9 (1982); *Rivera Pérez v. Cruz Corchado*, 119 D.P.R. 8 (1987); *Riley v. Rodríguez de Pacheco*, 119 D.P.R. 762 (1987).

Al tomar esta determinación hemos considerado que siendo el despacho rápido de los casos uno de los propósitos cardinales de las reglas de Procedimienton Civil, muy poco

se ganaría con exigir la presentación de la prueba de la parte demandada cuando el juez está convencido que los demandantes no pueden prevalecer. *Irizarry v. A.F.F.*, supra, pág. 421.

Por los fundamentos antes expuestos, *se confirma la sentencia recurrida.*

Así lo pronunció, manda el Tribunal y certifica el señor Secretario General. El Juez Asociado Señor Fuster Berlingeri disintió con una opinión escrita, a la cual se unió el Juez Asociado Señor Rebollo López.

(*Fdo.*) Francisco R. Agrait Lladó
*Secretario General*

— O —

Opinión disidente emitida por el Juez Asociado Señor Fuster Berlingeri, a la cual se une el Juez Asociado Señor Rebollo López.

En nuestra jurisdicción, para que proceda desestimarse una causa de acción bajo la Regla 39.2(c) de Procedimiento Civil de Puerto Rico, 32 L.P.R.A. Ap. III, es menester *que no exista duda* en cuanto a que la parte demandante no tiene derecho a la concesión de remedio alguno. Si la prueba de la parte demandante tiende a demostrar "que en algún grado el demandado pudo haber sido negligente", entonces "[l]a duda que surge del testimonio del demandante requiere que [el demandado] presente su caso, lo que dará al tribunal una visión más completa de los hechos". *Colombani v. Gob. Municipal de Bayamón*, 100 D.P.R. 120, 122–123 (1971). Véase *Torres v. A.F.F.*, 96 D.P.R. 648 (1968).

En el caso de autos, la prueba estipulada y el testimonio de los demandantes establecían los hechos siguientes:

(1) que los demandantes fueron arrestados y extradita-

dos a la isla por requerimiento del Gobierno del Estado Libre Asociado de Puerto Rico;

(2) que los demandantes fueron traídos a Puerto Rico bajo custodia policial y fueron ingresados a prisión al no poder prestar la fianza que le fue impuesta;

(3) que tanto el Tribunal de Distrito de Puerto Rico como el Tribunal Superior de Puerto Rico determinaron que no existía causa probable para proceder de forma criminal contra los demandantes por el imputado delito de robo de menores;

(4) que la querella de la madre biológica contra los demandantes, que dio lugar a los procesos iniciados por el Estado contra éstos, se presentó 18 meses después de ellos haberse trasladado a Estados Unidos con el menor en cuestión;

(5) que el Estado nunca cuestionó a los demandantes respecto a por qué tenían ellos al hijo de su sobrina, antes de proceder a arrestarlos y extraditarlos;

(6) que por no haber hecho tal indagación, los funcionarios del Estado no se enteraron de que los demandantes tenían al menor en su custodia con el consentimiento de sus padres, y

(7) que los demandantes sufrieron daños considerables por razón de su arresto y extradición.

A base de los hechos anteriores, no veo cómo se puede concluir que no existía duda alguna sobre la falta de méritos de la acción de los demandantes, como lo hizo el foro de instancia y la mayoría de este Tribunal, al confirmar la decisión a quo. Por el contrario, dichos hechos establecen prima facie que el Departamento de Justicia probablemente fue negligente al instar los procedimientos aludidos contra los demandantes. Conforme con los referidos hechos, puede cuestionarse si fue una acción responsable la del Departamento de Justicia de promover las graves medidas de arrestar, extraditar y encarcelar a unas personas *únicamente* a base de la querella de un familiar cercano de

éstos, presentada sospechosamente de modo tardío. Cuando menos existe algún tipo de duda sobre si el Departamento de Justicia debió realizar una investigación más a fondo respecto a la querella aludida antes de poner en marcha la maquinaria penal del Estado.

Vista la duda referida, que cualquier persona razonable debería tener en un caso como el de autos, no procedía la desestimación de la causa de acción en cuestión bajo la Regla 39.2(c) de Procedimiento Civil, *supra*, según la hemos interpretado antes. En mi criterio, el tribunal de instancia erró, y lo que procede es que se revoque su dictamen. Como la mayoría opta por otro curso de acción, disiento.