La Jueza Asociada Señora Fiol Matta
emitió la opinión del Tribunal.
Nos corresponde determinar el momento en que se ac-tiva la presunción de despido injustificado establecida en la Ley Número 80 de 30 de mayo de 1976, según enmen-dada, mejor conocida como la Ley de Despido Injustificado, *899 cuando un empleado querellante alega que fue objeto de un despido constructivo. En particular, si una mera alegación de despido constructivo es suficiente para activar dicha presunción e invertir la carga probatoria imponiendo al pa-trono querellado el peso de demostrar justa causa para la acción tomada.
I
El 1 de noviembre de 2004, el peticionario Félix A. Rivera Figueroa presentó una querella al amparo de la Ley Núm. 80 de 1976(1) (Ley 80) contra su antiguo patrono (Fuller Brush). Además, solicitó que el caso se tramitara según el procedimiento sumario laboral provisto por la Ley Número 2 de 17 de octubre de 1961.(2) En su querella, el señor Rivera Figueroa alegó, entre otras cosas,(3) que lo despidieron sin justa causa como vendedor de Fuller Brush al verse forzado a renunciar a su puesto en mayo del 2004. De esa forma, alegó que fue víctima de un despido constructivo. Para sustentar su reclamación, el señor Rivera Figueroa alegó que sufrió cambios drásticos y repen-tinos en el método de remuneración; que lo presionaron a renunciar como empleado para convertirse en contratista independiente, y que fueron hostiles con él tras rechazar la oferta de convertirse en contratista independiente. En su contestación a la querella, el patrono negó el despido y alegó que la renuncia del señor Rivera Figueroa fue voluntaria. En particular, alegó que los cambios en las con-diciones de trabajo del señor Rivera Figueroa no se hicie-ron con la intención de forzarle a renunciar y que fueron iguales para todos los vendedores como parte de un proceso general de cambios en la compañía.
Amparándose en la presunción creada por la Ley 80 de que todo despido es injustificado, el señor Rivera Figueroa *900 solicitó al Tribunal de Primera Instancia que requiriera al patrono querellado iniciar la presentación de la prueba. El empleado alegó que según la Ley 80, una vez presentada la causa de acción a su amparo, se activa una presunción de despido injustificado, por lo cual correspondía al patrono querellado ofrecer prueba para demostrar, mediante pre-ponderancia de la evidencia, que el despido fue justificado. Por su parte, el patrono querellado argumentó que para activar la presunción de despido injustificado el quere-llante tenía que establecer primero que su renuncia, en efecto, equivalía a un despido constructivo.
El foro de instancia le dio la razón al patrono y ordenó al querellante presentar su prueba y éste se limitó a ofrecer su testimonio. Relató las presiones que recibió para firmar un contrato que lo convertiría en contratista indepen-diente, y el trato que recibió desde que rechazó esa oferta, sobre el cual expresó que ya “no era el mismo”, era “hostil” y le trataban “de codo”. Testificó también sobre la elimina-ción de beneficios —como una cena pagada por el patrono para los vendedores— y que ya ni un “buenos días” le ofre-cían en el trabajo.(4) Tras esta prueba del querellante, el patrono solicitó la desestimación de la causa al amparo de la Regla 39.2(c) de Procedimiento Civil, 32 L.P.R.A. Ap. III. El Tribunal de Primera Instancia declaró “con lugar” dicha moción y desestimó la causa de acción. En esencia, el foro primario razonó que la prueba no demostró que la renun-cia del señor Rivera Figueroa constituyera un despido constructivo, por lo cual no le cobijaba la presunción esta-blecida por la Ley 80.
Inconforme con esta determinación, el señor Rivera Figueroa acudió, oportunamente, al Tribunal de Apelaciones, y alegó que el Tribunal de Primera Instancia erró al orde-narle presentar su prueba antes que la del patrono. Sos-tuvo que la presunción que crea la Ley 80 se activa con la presentación de la querella y que por ello era el patrono quien tenía que iniciar el desfile de prueba para derrotar la *901 presunción de que se trató de un despido sin justa causa. El foro apelativo confirmó la decisión del Tribunal de Pri-mera Instancia. Razonó que “[s]i bien es cierto que el pa-trono viene obligado a alegar en su contestación a la de-manda los hechos que dieron lugar al despido, el empleado que alega un despido constructivo debe primero formular de forma clara y precisa los actos que alegadamente moti-varon su renuncia y además, demostrar la magnitud de los alegados vejámenes y que la única alternativa razonable ... era renunciar ...”.(5) El Tribunal de Apelaciones con-cluyó que “Molo entonces al patrono le corresponde pre-sentar sus alegaciones en oposición” y que la “renuncia per se no activa una presunción de despido injustificado”.(6) Sostuvo, además, que la desestimación al amparo de la Re-gla 39.2(c) de Procedimiento Civil, supra, estaba basada en la prueba y, por lo tanto, no erró el Tribunal de Primera Instancia al desestimar la causa.
Inconforme aún, el señor Rivera Figueroa recurrió ante este Tribunal mediante una oportuna petición de certiorari. Como único error, planteó que ambos tribunales inferiores incidieron al sostener que le correspondía al que-rellante el desfile inicial de la prueba, toda vez que, en una reclamación presentada al amparo de la Ley 80, el patrono querellado está obligado a presentar la prueba inicial que establezca que el despido fue justificado. Expedimos el auto de certiorari y, con el beneficio de la comparecencia de las partes, estamos en posición de resolver.
II
Hemos reiterado la importancia del derecho al trabajo en nuestra sociedad en muchas ocasiones, más reciente-mente en Domínguez Castro et al. v. E.L.A. I, 178 D.P.R. 1 (2010).(7) En efecto, la política pública establecida en nues- *902 tra legislación laboral reconoce que el trabajo es un ele-mento central de nuestra vida en sociedad. Es así, tanto por lo que significa a nivel individual en la vida diaria de decenas de miles de puertorriqueños y puertorriqueñas, como por el beneficio colectivo que se genera cuando a tra-vés del esfuerzo ofrecemos calidad de vida a nuestro pueblo y desarrollo social y económico para nuestro país.(8) Ade-más, como señaló el Juez Asociado Señor Fuster Berlingeri en su opinión concurrente en Arthur Young & Co. v. Vega III, 136 D.P.R. 157, 189 (1994), en la medida en que “la persona aporta al bien común y se autor [r]ealiza”, el tra-bajo adquiere un hondo significado ético.
De las veinte secciones que componen el Artículo II de nuestra Constitución, cinco de ellas se refieren directa-mente a derechos relacionados al trabajo.(9) Se trata de un reconocimiento por la generación constituyente de la inhe-rente desigualdad que caracteriza la relación obrero-patronal, en donde el patrono, por su capacidad económica, posee mayor poder que el trabajador individual que nece-sita de su empleo para sobrevivir. Por eso, los aspectos de la relación obrero-patronal que gozan de rango constitucio-nal están diseñados para proteger los derechos de los trabajadores.
En el caso particular de la terminación de la relación obrero-patronal, que es lo que debemos atender en este caso, es significativa la decisión de la Convención Consti-tuyente de elevar a rango constitucional el derecho del tra- *903 bajador o trabajadora a renunciar libremente a su empleo, pero no así el derecho de un patrono a despedir a un trabajador.(10) Según reconocimos en García v. Aljoma, 162 D.P.R. 572, 587-588 (2004), “[a]l proponer los derechos de los trabajadores, la Comisión de Cartas [sic] de Derechos de la Asamblea Constituyente señaló la 'alta dignidad’ del esfuerzo humano y recalcó que el énfasis de los derechos propuestos recaía ‘en aquel grueso de la clase trabajadora que por razón de especial desvalimiento históricamente ha necesitado, aunque no siempre ha recibido, protección social’ ”.(11)
A partir de este reconocimiento de la generación consti-tuyente a los derechos de los trabajadores como uno de los ejes centrales de nuestra vida constitucional, la legislación se ha ocupado de establecer un balance en la relación entre el trabajador y el patrono.(12) De igual manera, nuestra ju-risprudencia ha reconocido este legado constitucional y su desarrollo estatutario posterior.(13) Recientemente, en Orsini García v. Srio. de Hacienda, 177 D.P.R. 596, 618 (2009), reconocimos que en la dinámica obrero-patrono la persona empleada es aún la parte más débil y que, por ello, “el Estado se ha encargado de aprobar una variedad de leyes protectoras del trabajo, cuya finalidad es proteger el empleo, regular el contrato de trabajo y asegurar la salud y seguridad del obrero”. No hay duda, pues, de que nuestro ordenamiento laboral está orientado a la protección de los trabajadores y evitar las prácticas injustas del trabajo.(14)
*904 III
A. El derecho al empleo, que es, evidentemente, el principal derecho laboral, cobra mayor importancia si to-mamos en cuenta que muchas de las protecciones estatu-tarias no tendrían sentido si no se protege el derecho mismo a preservar un empleo ante una actuación capri-chosa e irrazonable de un patrono. Así lo reconocimos en Orsini García v. Srio. de Hacienda, supra, pág. 622, al ex-presar que “[e] sta política pública, dirigida a desalentar los despidos injustificados, se sustenta en que sin la protección del empleo no son necesarios otros derechos laborales que, por definición, requieren una relación de trabajo y, claro, en que el trabajo tiene una función social trascendental tanto en el ámbito individual como en el colectivo”.
La doctrina del employment at will, que daba al patrono libertad para contratar y despedir a un empleado con justa causa o sin ella, sin mediar indemnización, es ajena a nuestro esquema constitucional y estatutario. Por eso, aunque el tema de la indemnización por despido injustifi-cado todavía "es objeto de efervescencia judicial en los Es-tados Unidos, donde múltiples tribunales han rechazado la tradicional doctrina employment at will”,(15) en Puerto Rico tenemos una larga tradición que es contraria a esa doctrina.(16)
Sin embargo, nuestro ordenamiento estatutario no prohíbe absolutamente el despido de un empleado. Más bien, castiga el despido sin justa causa. La Ley 80, según enmendada, mejor conocida como la Ley de Despido Injustificado, regula las circunstancias en que un patrono privado puede despedir a un empleado. Esta ley, a su vez, es producto de un desarrollo estatutario previo que, más que constituir una excepción a la llamada doctrina del employ- *905 merit at will, se encamina por una senda totalmente distinta. (17)
En su Artículo 1, la Ley 80 establece que toda persona que sea empleada de comercio, industria o cualquier otro negocio o sitio de empleo, que sea contratada sin tiempo determinado y trabaje mediante remuneración de alguna clase, que la hayan despedido de su cargo sin mediar justa causa, tendrá derecho a recibir una indemnización de su patrono, además del sueldo que hubiese devengado. Esta compensación se conoce como la mesada y su cuantía dependerá del tiempo que el empleado ocupó su puesto y del sueldo que devengaba.(18)
La Ley 80 articula los supuestos que constituyen justa causa para el despido en su Artículo 2.(19) Por eso, como regla general, todo despido es injustificado a menos que responda a las excepciones provistas en la propia Ley 80. Será justa causa para el despido: (1) que el obrero siga un patrón de conducta impropia o desordenada; (2) que el empleado no rinda su trabajo en forma eficiente o lo haga tardía y negligentemente o viole las normas de calidad del producto que se produce o se maneja en el establecimiento; (3) que el empleado viole reiteradamente las reglas y los reglamentos razonables establecidos para el funcionamiento del establecimiento, siempre que se le haya suministrado oportunamente copia escrita de los mismos; (4) que surja el cierre total, temporero o parcial de las operaciones del establecimiento; (5) que sucedan cambios tecnológicos o de reorganización, cambios de estilo, diseño o naturaleza del producto que se produce o maneja en el establecimiento y cambios en los servicios al público, o (6) que se requieran reducciones en empleo debido a una merma en el volumen de producción, ventas o ganancias *906 anticipadas o que prevalecen al ocurrir el despido. Un des-pido que tenga lugar en otras circunstancias será injustifi-cado y se compensará con el pago de la mesada. Es decir, la Ley 80 aplica a aquellos empleados de comercio, industria o cualquier otro negocio o sitio de empleo que: (1) estén contratados sin tiempo determinado; (2) reciban una remu-neración, y (3) sean despedidos de su cargo sin que haya mediado justa causa.(20)
La Ley 80 es, indudablemente, una legislación repara-dora y, como tal, estamos obligados a interpretarla liberal-mente a favor de los derechos del trabajador —resolviendo toda duda a favor del obrero— para cumplir con sus propó-sitos eminentemente sociales y reparadores.(21) Ahora bien, también tiene una función coercitiva y un objetivo desalen-tador contra el capricho patronal.(22) En Jusino et als. v. Walgreens, 155 D.P.R. 560, 571 (2001), explicamos que “[l]a Ley 80 tiene un valioso propósito social y coercitivo, a saber, sancionar que un patrono despida a su empleado o empleada salvo que demuestre una causa justificada para ello. En otras palabras, tiene el propósito de brindarles mayor protección a los trabajadores de Puerto Rico”. (En-fasis suplido.) Nuestra jurisprudencia interpretativa ha sido consecuente en ofrecer la mayor protección al trabaja-dor cuando éste es objeto del capricho o abuso patronal. Por eso recalcamos recientemente que las protecciones de la Ley 80 son irrenunciables.(23)
C. La Ley 80 crea una presunción de que todo despido es injustificado y que le corresponde al patrono, mediante preponderancia de la prueba, demostrar lo con- *907 trario; es decir, que hubo justa causa.(24) De esa forma, el peso de la prueba para establecer que el despido fue justi-ficado, una vez activada la presunción, recae en el patrono y el criterio, como en cualquier proceso civil, es el de pre-ponderancia de la prueba. (25)
Pero, para disfrutar de la presunción generada por la Ley 80 hace falta, como elemento de umbral, que haya ha-bido un despido. El empleado tiene que demostrar que cumple con los requisitos de la causa de acción: que fue empleado de un comercio, industria u otro negocio; que su contrato era por tiempo indeterminado; que recibía remu-neración por su trabajo, y que fue despedido de su puesto.
Para propósitos de la Ley 80, esta condición de ser despedido no está limitada por la definición usual del término “despido”.(26) Más bien, la definición de la Ley 80 es bastante amplia, pues abarca, no sólo la acción unilateral del patrono dirigida a cesantear al empleado, sino las acciones dirigidas a inducirlo o forzarlo a renunciar, tales como imponerle o intentar imponerle condiciones de trabajo más onerosas, reducirle el salario, rebajarlo en categoría o someterlo a vejámenes o humillaciones de hecho o de palabra. (27) A esta última modalidad de despido se le conoce como despido constructivo o tácito.(28)
En el despido constructivo, al empleado se le obliga a renunciar mediante la imposición de condiciones onerosas.(29) Cabe señalar que este Tribunal reconoció esta *908 modalidad de despido aún antes de la vigencia de la Ley 80 cuando resolvimos que aquellos “actos voluntarios e injus-tificados de un patrono encaminados a obligar al empleado a dejar su cargo, constituyen un despido cuando la única alternativa razonable que queda al empleado es la de abandonar el cargo”.(30) Claro está, no basta con cualquier molestia o condición antipática en el empleo y, cuando se trate de vejámenes y humillaciones, éstos deben ser de magnitud sustancial.(31) Tampoco se determina la magni-tud y el efecto de los actos patronales con referencia a la visión subjetiva del empleado individual; más bien, se uti-liza un criterio objetivo al examinar si una persona razo-nable se sentiría forzada a renunciar como resultado de las acciones del patrono. (32)
Como hemos visto, la definición de despido constructivo de la Ley 80, según la cual será considerada como tal la renuncia del empleo motivada por actuaciones del patrono dirigidas a inducir o forzar al empleado a renunciar, recoge el desarrollo jurisprudencial de este concepto hasta la fecha en que fue aprobada la ley. Después de su aprobación, nuestra jurisprudencia ha preservado los elementos esenciales de despido constructivo que delineamos en Vélez de Reilova v. R. Palmer Bros., Inc., 94 D.P.R. 175 (1967).(33) En Arthur Young & Co. v. Vega III, supra, pág. 183, establecimos que “para que los actos voluntarios e injustificados del patrono constituyan un despido implícito para fines de la Ley 80, es preciso que el empleado pruebe que la única alternativa razonable que le quedaba era el *909 abandono de su cargo”. (Énfasis suplido.) Es decir, no basta con una mera alegación de que la renuncia fue un despido constructivo. Como parte de la causa de acción al amparo de la Ley 80, hace falta demostrar el hecho base del des-pido, sea directo o en su modalidad constructiva o tácita.
El Departamento del Trabajo y Recursos Humanos aprobó una guía interna sobre la Ley 80 que detalla los elementos del despido constructivo y las presunciones que crea dicha ley.(34) En cuanto al despido constructivo, la guía expresa que las “acciones del patrono deben exhibir un nivel de seriedad considerable. Simples mal entendidos [sic] o situaciones antipáticas que no tienen el efecto de crearle al empelado un ambiente de trabajo que resulte intimidante, hostil y ofensivo no conllevan ... un despido constructivo”.(35) Por el contrario, debe tratarse de actuaciones patronales “arbitrarias, irrazonables y caprichosas que generen una atmósfera hostil para el obrero que impidan del todo su sana estadía en el trabajo y que sean originadas por un motivo ajeno al legítimo interés de salvaguardar el bienestar de la empresa. Gestiones administrativas legítimas, realizadas con el único propósito de salvaguardar el bienestar de la empresa, no dan lugar a un despido constructivo si la intención del patrono al realizar las mismas no era la de lesionar la condición de empleado del trabajador”.(36) Por su parte, la doctrina en Estados Unidos en cuanto al concepto despido constructivo es muy similar a la puertorriqueña. (37)
*910 IV
Como hemos visto, una de las herramientas más impor-tantes que crea la Ley 80 es la presunción de que todo despido es injustificado. En efecto, el peticionario basa su solicitud en esta presunción. Para comprender el alcance de la presunción de despido injustificado y determinar su aplicación en este caso, veamos primeramente la figura de la presunción, su relación con las cargas probativas en los casos civiles y su manifestación en controversias sobre el derecho de empleo.
A. Una presunción es una deducción de un hecho que la ley autoriza a hacer o requiere que se haga a partir de otro hecho o grupo de hechos previamente establecidos. A ese hecho o grupo de hechos previamente establecidos se les denomina hecho básico y al hecho deducido mediante la presunción se le denomina hecho presumido.(38) El debido proceso de ley exige que haya un vínculo racional entre el hecho básico y el hecho presumido, que, como indica el profesor Chiesa Aponte, puede surgir de la lógica, de la experiencia o de cierta política pública.(39) En otras palabras, las presunciones no se activan solas: “Las reglas de inferencia se activan si el juzgador [o juzgadora] estima que la evidencia ha establecido el hecho básico, al menos como lo más probable.” (Enfasis suplido.(40)
En una acción civil, el efecto de una presunción es imponerle a la parte que niega el hecho presumido el peso de probar su inexistencia. Si la parte contra la cual se establece la presunción no ofrece prueba para demostrar la inexistencia del hecho presumido, la juzgadora o el juzga- *911 dor debe aceptar que el hecho existe. Sin embargo, si se presenta prueba en apoyo de la inexistencia de tal hecho, ésta debe ser suficiente para persuadir a quien juzga que es más probable la inexistencia del hecho presumido que su existencia.(41) Es decir, una vez activada la presunción ordenada por ley, la parte contra quien se emplea tiene el deber de presentar prueba para rebatir la presunción y dicha evidencia debe, además, persuadir al juzgador. De lo contrario, el hecho presumido sobrevive. A ello nos referi-mos cuando caracterizamos las presunciones en el área civil como fuertes. Como nos dice el profesor Chiesa Aponte, “[n]o se trata sólo de la carga de presentar evidencia, sino también de que la evidencia sea de [tal calidad] que per-suada al juzgador [o juzgadora] de que lo más probable es la falsedad del hecho presumido”.(42)
Nuestra jurisprudencia ha recogido estos principios fundamentales. Hemos resuelto que la mera alegación de un hecho básico, sin haberlo establecido debidamente, no activa una presunción que permita la inferencia de un hecho presumido. (43) Un demandante tiene la obligación de aportar prueba que establezca los hechos básicos que den lugar a la presunción. (44) De otra manera, no sería posible ni razonable exigirle al demandado que derrote una presunción sostenida solamente por una alegación.(45) De esa forma, la validez de la presunción dependerá inexorablemente de la existencia de unos hechos básicos debidamente probados y su relación racional con el hecho presumido.(46)
Para que un obrero demandante en un pleito al amparo de la Ley 80 pueda valerse de la presunción fuerte de que su despido fue injustificado, tiene que presentar *912 prueba demostrativa de que, en efecto, lo despidieron. En caso de que alegue un despido constructivo, el trabajador tiene que demostrar que las circunstancias de su renuncia cumplen con los requisitos que establece nuestro ordena-miento para esa conclusión. La presunción de despido in-justificado que establece la Ley 80 no se activa hasta tanto logre persuadir al juzgador o juzgadora de ese hecho bá-sico, entiéndase, de que su renuncia fue en realidad un despido tácito.(47)
Debemos puntualizar que lo anterior no despoja a un trabajador demandante de la presunción de despido injustificado que establece la Ley 80. Además, cuando la presunción se suscita en un pleito que trata sobre los derechos de los trabajadores, hay que tomar en cuenta la política pública incorporada en la ley. Por eso, presunciones como las de despido injustificado “están investidas ‘de tan alto interés público’ [que] sólo pueden derrotarse por prueba que sea amplia y vigorosa ...”.(48) De esa forma, el patrono demandado siempre tendrá el peso de la prueba en cuanto a la justificación del despido. Si se logra activar la presunción y la evidencia que presenta el patrono no la derrota, la presunción sobrevive y prevalece el obrero. Pero, para establecer el hecho base que da vida a la presunción, el trabajador tiene que probarlo al amparo de la citada Regla 110. Solamente tiene el peso de la prueba en cuanto al establecimiento del hecho básico. En lo demás, entiéndase la disposición final del pleito una vez se activa la presunción, la carga probatoria es del patrono. Como nos dice el profesor Chiesa Aponte, “[p]or efecto de presunciones, la parte que tiene el peso de la prueba podría no tener la obligación de presentar evidencia”.(49) En el ámbito de una causa de acción al amparo de la Ley 80, esto significa *913 que, en cuanto a la controversia sobre la justificación del despido, el empleado cobijado por la presunción podría pre-valecer en el pleito sin más evidencia que la misma presunción. No obstante, para activar dicha presunción, tiene que presentar inicialmente alguna prueba para de-mostrar la existencia del hecho base que la justifica.(50)
B. Como regla general, el peso de la prueba en toda acción civil recae sobre la parte demandante. El estándar aplicable de suficiencia de prueba será el de preponderancia.(51) Ahora bien, como nos dice el profesor Emmanuelli Jiménez, “[c]uando se menciona el peso de la prueba en una acción judicial, se está refiriendo a la obli-gación de convencer al juzgador [o juzgadora] sobre la forma particular en que ocurrieron los hechos que se alegan”.(52) Por eso, los temas de carga de prueba y presun-ciones son inseparables.(53)
Como vimos, una vez probados los hechos que dan base a la activación de la presunción, cambia el peso de la prueba, de manera que la otra parte tiene la obligación de persuadir al juzgador o a la juzgadora sobre lo contrario.(54) Esto, nos dice Emmanuelli Jiménez, “puede llevar al caso de que un demandante, quien generalmente *914 tiene el peso de la prueba en una acción civil, sólo tenga que probar los hechos básicos de mía presunción y después descanse en ella para establecer la totalidad de la reclamación”.(55) A igual conclusión llega el profesor Chiesa Aponte cuando manifiesta que “[l]as presunciones afectan las cargas probatorias. Aunque inicialmente las cargas probatorias estén en una misma parte, esto puede cambiar por efecto de presunciones”.(56) Es decir, si un demandante logra activar una presunción que le favorezca, puede pre-valecer contra un demandado que presente prueba para refutarla. Ello, aunque el demandante no presente más prueba que la necesaria para activar la presunción. Si la prueba que ofreció el demandado no derrota la presunción mediante preponderancia de la evidencia, la presunción se sostiene y el demandante triunfará en su causa de acción. A ello nos referimos cuando afirmamos que “[e]n nuestra jurisdicción las presunciones tienen el efecto de transferir al demandado el peso de producir la evidencia y, además, el de persuadir al juzgador”. (Enfasis en el original.(57)
C. La Ley 80 no es el único esquema estatutario labo-ral que genera una presunción contra el patrono e invierte el peso de la prueba en su contra. Lo mismo sucede con la Ley Número 100 de 30 de junio de 1959, que prohíbe el discrimen en el empleo y crea una presunción de despido discriminatorio si el empleado querellante logra establecer un caso prima facie con los elementos requeridos por la ley, entre éstos el despido o acto peijudicial y la ausencia de justa causa, elementos que hemos equiparado a los térmi-nos homólogos de la Ley 80.(58) También hemos resuelto que, al igual que según la Ley 80, una vez establecido el caso prima facie, se invierte el peso de la prueba y le co- *915 rresponde al patrono demandado demostrar que no están presentes los elementos requeridos por ley mediante pre-ponderancia de la evidencia. Esta normativa evidenciaría, como explicamos en Ibáñez v. Molinos de P.R., Inc., 114 D.P.R. 42 (1983), “tiene como fundamento que el patrono demandado, por su posición más ventajosa, generalmente tiene mayor acceso a la evidencia del despido y puede pro-bar la ausencia del discrimen con relativa facilidad”.(59) A una conclusión similar llegamos en Belk v. Martínez, 146 D.P.R. 215, 231 (1998), donde dijimos que “una vez que el empleado establece las circunstancias esenciales para que el juzgador pueda asumir el hecho presumido —que el des-pido o acción perjudicial se realizó sin justa causa— se invierte la carga probatoria”. íd. Como puede observarse, parte del caso prima facie es, precisamente, demostrar el despido o acto peijudicial y no meramente alegarlo.(60)
V
La Regla 39.2(c) de Procedimiento Civil de 2009 regula la desestimación de un caso por insuficiencia de prueba de la manera siguiente:
... Después que la parte demandante haya terminado la pre-sentación de su prueba, la parte demandada, sin renunciar al derecho de ofrecer prueba en caso de que la moción sea decla-rada “sin lugar”, podrá solicitar la desestimación fundándose en que bajo los hechos hasta ese momento probados y la ley, la parte demandante no tiene derecho a la concesión de remedio alguno. El tribunal podrá entonces determinar los hechos y *916 dictar sentencia contra la parte demandante, o podrá negarse a dictar sentencia hasta que toda la prueba haya sido presentada.(61)
En una moción al amparo de la Regla 39.2(c), conocida como una moción contra la prueba o non-suit, el tribunal está autorizado, luego de que la parte demandante presente la prueba, a aquilatarla y a formular su apreciación de los hechos, según la credibilidad que le merezca la evidencia. Pero esa facultad se debe ejercitar después de un escrutinio sereno y cuidadoso de la prueba.(62) En caso de duda, se debe requerir al demandado que presente su caso.(63) En ese momento, corresponde al tribunal determinar si la prueba que presentó la parte demandante es suficiente por sí misma para satisfacer los requisitos de su particular causa de acción.
Dado que de acuerdo con la Regla 39.2(c) de Procedimiento Civil de 2009 la desestimación se da contra la prueba, la decisión del tribunal dependerá de su apreciación de la evidencia presentada. Es norma conocida en nuestra jurisdicción que los tribunales apelativos no intervendremos con la apreciación que hagan de la prueba los foros de instancia en ausencia de pasión, prejuicio, parcialidad o error manifiesto.(64) Sin embargo, ello no significa que haya inmunidad frente a la función revisora de los tribunales apelativos.(65) Además, dada la gravedad de una desestimación de la causa de acción, los tribunales deben ser cuidadosos al atender urna moción al amparo de la Regla 39.2(c) pues conlleva el final de la reclamación de un demandante y de su día en corte. Se trata de una decisión que descansa en la sana discreción del tribunal.(66)
*917 VI
En el caso de autos, el señor Rivera Figueroa entabló una demanda al amparo de la Ley Número 80 alegando que fue víctima de un despido en su modalidad constructiva. Sostuvo que la mera presentación de la de-manda al amparo de dicha ley activaba la presunción de despido injustificado que ésta provee, por lo que le corres-pondía al patrono demandado iniciar la presentación de la prueba. No tiene razón.
En primer lugar, para que un empleado demandante pueda aprovecharse de la presunción de despido injustifi-cado que provee la Ley 80 tiene que demostrar, con prueba suficiente, el hecho base que da vida a la presunción: el despido. Esta ley no provee una presunción de que todo empleado que ya no trabaja en su antiguo lugar de trabajo fue despedido y que ese despido fue injustifi-cado. Tampoco provee para que la mera presentación de una causa de acción según la ley o una alegación de que la renuncia fue, realmente, un despido constructivo, sea sufi-ciente para revertir el peso de la prueba. El empleado de-mandante tiene el peso de la prueba inicial de demostrar al tribunal que, en efecto, ha ocurrido un despido. El peso inicial de la prueba en un caso al amparo de la Ley 80 impone al empleado demandante la carga de establecer el hecho base, ya sea la cesantía, la suspensión mayor de tres meses o la renuncia equivalente a despido constructivo, que active la presunción de despido injustificado. Una vez activada la presunción de despido injustificado, el peso de la prueba se invierte y le corresponde al patrono deman-dado derrotarla. Si el patrono acepta el despido o si el em-pleado logra establecerlo en su turno inicial, le corresponde al patrono presentar su prueba.
Si se alega un despido en su modalidad constructiva, hay que demostrarle al tribunal que la renuncia fue la única alternativa razonable que tenía el empleado ante las condiciones de trabajo onerosas que le impuso su patrono *918 con el propósito de inducir o forzar su renuncia. Por lo tanto, hasta que no demuestre ese hecho básico a satisfac-ción del tribunal, no se activará la presunción que la Ley Número 80 provee. A la misma vez, ante el mandato cons-titucional y estatutario de proteger los derechos de los tra-bajadores, y dado que el despido constructivo es un despido disfrazado que tiene la apariencia de una renuncia volun-taria, los tribunales de instancia deben ser sumamente cautelosos al momento de determinar si, en efecto, una re-nuncia fue forzada. Por lo tanto, es inmeritoria la alega-ción del señor Rivera Figueroa de que erró el Tribunal de Primera Instancia al ordenarle presentar prueba antes que al patrono demandado.
La parte demandante limitó su prueba inicial al testi-monio del señor Rivera Figueroa en el sentido de que, en varias ocasiones, el demandado le intentó persuadir de fir-mar un contrato que modificaría su relación del trabajo con el patrono, de empleado a contratista independiente. No surge del expediente que esos intentos hayan sido intimi-dantes, atropellados o que haya mediado presión indebida. El peticionario también alegó en su testimonio que el trato que le ofrecían en su empleo tras rechazar la oferta del patrono no era el mismo, era hostil, le trataban de codo, no le daban los buenos días y le eliminaron algunos beneficios tales como una cena de vendedores y privilegios relaciona-dos con el estacionamiento. Por su parte, el patrono de-mandado alegó que el cambio de condiciones laborales fue para todos los vendedores y que no fueron de tal magnitud como para constituir un despido constructivo.
La primera alegación del patrono es inmeritoria. El estándar para determinar si una actuación opresiva del patrono contra un empleado es de tal magnitud que le obliga a renunciar no depende de que sea únicamente contra él. Es posible que el patrono haya creado condiciones de trabajo aplicables a varios empleados que les fuerzan a todos a renunciar. De ese ser el caso, habría un despido constructivo independientemente de que no haya sido diri- *919 gido específicamente contra cada uno de ellos de manera particular. Para determinar si una actuación patronal constituye despido constructivo, lo decisivo es si por ello una persona razonable se puede sentir, y en efecto se siente, forzada a renunciar, lo cual puede ser el producto de condiciones onerosas dirigidas contra él o contra varios empleados.(67) Por eso, el segundo argumento del deman-dado es el determinante, es decir, si el querellante presentó evidencia suficiente como para establecer que las condicio-nes que impuso el patrono eran de tal magnitud como para equiparar la renuncia a un despido. En cuanto a esto, no hay nada en el expediente que nos permita alejamos de la apreciación de la prueba hecha por el foro de instancia. Sin duda, un trato frío en el lugar del trabajo y la cancelación de beneficios que ofrecía el patrono sin obligación a ello, como cenas a vendedores y privilegios de estacionamientos, resultan insuficientes para concluir que la única alterna-tiva razonable para el señor Rivera Figueroa era renunciar.
Al no demostrarse a satisfacción del juzgador el hecho básico de que la renuncia era un despido constructivo, nunca se activó la presunción de despido injustificado que provee la Ley 80. Evidentemente, tampoco se invirtió el peso de la prueba y el demandante tenía la carga de probar su caso sin recurso a presunción alguna. El foro de instan-cia determinó que, ausente la presunción y ante la prueba presentada por el demandante, éste no tenía derecho a la concesión de los remedios solicitados. No encontramos base en el expediente para alterar esa conclusión.
Como consecuencia, actuó correctamente el Tribunal de Primera Instancia al desestimar la causa al amparo de la Regla 39.2(c) de Procedimiento Civil, supra, como también resolvió correctamente el foro apelativo al confirmar esa decisión. Por los fundamentos expuestos, se confirma la Sentencia del Tribunal de Apelaciones.

*920
Se dictará sentencia de conformidad.

El Juez Asociado Señor Rivera García concurrió con el resultado sin opinión escrita.

 29 L.P.R.A. secs. 185a 185m.

 32 L.P.R.A. secs. 3118-3131.

 Las demás alegaciones no están ante nuestra consideración.

 Transcripción del juicio en su fondo, Apéndice del Certiorari, págs. 106-110.

 Sentencia del Tribunal de Apelaciones, Apéndice del Certiorari, págs. 77-78.

 íd., pág. 78.

 Véase, además, Amy v. Adm. Deporte Hípico, 116 D.P.R. 414, 421 (1985).

 C. Zeno Santiago y V.M. Bermúdez Pérez, Tratado de Derecho del Trabajo, San Juan, Pubs. J.T.S., T. I, 2003, pág. 1.

 Sección 12 (la prohibición de la servidumbre involuntaria); Sección 15 (la prohibición de emplear a menores de catorce años). La Sección 16 recoge múltiples derechos laborales: el derecho de todo trabajador o trabajadora de escoger libremente su ocupación y renunciar a ella, igual paga por igual trabajo, salario mínimo razo-nable, protección contra riesgos para la salud e integridad personal y jornada que no exceda las ocho horas diarias. Por su parte, las Secciones 17 y 18 reconocen el dere-cho a organizarse y negociar colectivamente, y a realizar huelgas y actividades concertadas. Por su parte, la frustrada Sección 20 reconocía el derecho de toda persona a obtener trabajo. Sobre este derecho en particular, hemos expresado que el mismo “late entre aquellos derechos que aunque no se mencionan expresamente en el texto, el pueblo se reserva frente al poder político creado”. Amy v. Adm. Deporte Hípico, supra, pág. 421.

 Art. II, Sec. 16, Const. E.L.A., L.P.R.A., Tomo 1.

 Citando a 4 Diario de Sesiones de la Convención Constituyente 2573 (1951). Véase L.H. Sánchez Caso, Reflexiones sobre la responsabilidad civil de los oficiales y gerenciales en reclamaciones de despido o discrimen, 34 (Núm. 2) Rev. Jur. U.I.P.R. 183, 190, 193 (2000).

 Zeno Santiago y Bermúdez Pérez, op. cit., pág. 51.

 García v. Aljoma, 162 D.P.R. 572, 583 (2004).

 Rivera v. Pan Pepín, 161 D.P.R. 681, 688 (2004); Díaz v. Wyndham Hotel Corp., 155 D.P.R. 364, 374 (2001). Véase, además, C. Zeno Santiago, El despido y la política social en nuestro estado de derecho, 34 (Núm. 2) Rev. Jur. U.I.P.R. 213 (2000).

 P.J. Salicrup, Ariel Arroyo v. Rattan Specialties: ¿aplican en Puerto Rico las excepciones a la doctrina de “Employment at Will”?, 21 (Núm. 2) Rev. Jur. U.I.P.R. 367 (1987).

 Arroyo v. Rattan Specialties, Inc., 117 D.P.R. 35, 65 (1986).

 Véase, por ejemplo, la Ley Núm. 50 de 20 de abril de 1949 (29 L.P.R.A. ants. secs. 183-185.

 29 L.P.R.A. sec. 185a.

 29 L.P.R.A. sec. 185b.

 Orsini García v. Srio. de Hacienda, 177 D.P.R. 596(R-1) (2009); Zeno Santiago y Bermúdez Pérez, op. cit., pág. 98.

 Irizarry v. J & J Cons. Prods. Co., Inc., 150 D.P.R. 155, 164 (2000); Belk v. Martínez, 146 D.P.R. 215, 232 (1998). La Exposición de Motivos de la Ley Núm. 80 de 30 de mayo de 1976 hace hincapié en la intención de sustituir una protección laboral que califica como “inadecuada e ineficaz, especialmente por lo limitado del remedio que ofrece a un empleado que fuese víctima de un despido injustificado”. (Enfasis suplido.) 1976 Leyes de Puerto Rico 267, 268.

 Vélez Cortés v. Baxter, 179 D.P.R. 455 (2010).

 Vélez Cortés v. Baxter, supra, pág. 13.

 29 L.P.R.A. sec. 185a; Rivera v. Pan Pepin, supra, pág. 690; Belk v. Martínez, supra, págs. 230-231; Báez García v. Cooper Labs., Inc., 120 D.P.R. 145, 152 (1987).

 orgíní García v. Srio de Hacienda, supra, pág. 638 esc. 95(R-1); Díaz v. Wyndham Hotel Corp., supra, pág. 378.

 Hemos dicho que el despido es la ruptura unilateral que hace el patrono del contrato individual de trabajo celebrado con uno o varios trabajadores. Díaz v. Wyndham Hotel Corp., supra, pág. 374; Zeno Santiago, supra, pág. 214.

 29 L.P.R.A. sec. 185e. Estos ejemplos que ofrece la propia ley de lo que constituye despido constructivo no son taxativos.

 Esta modalidad de despido estaba contemplada en la Ley Número 50 de 20 de abril de 1949. Véanse: Zeno Santiago, supra, pág. 217; Zeno Santiago y Bermúdez Pérez, op. cit, pág. 99.

 Zeno Santiago, supra, pág. 215.

 Vélez de Reilova v. R. Palmer Bros., Inc., 94 D.P.R. 175, 178 (1967).

 A. Acevedo Colom, Legislación de relaciones del trabajo comentadas, San Juan, [ed. autor], 2007, pág. 165; Arthur Young & Co. v. Vega III, supra, pág. 184.

 Zeno Santiago, supra, pág. 217.

 Véanse: Malavé v. Oriental, 167 D.P.R. 593 (2006); Nazario v. E.L.A., 159 D.P.R. 799 (2003) (Sentencia). En S.L.G. Hernández Beltrán v. TOLIC, 151 D.P.R. 754, 777 (2000), caso de despido constructivo en una reclamación al amparo de la Ley Número 100 de 30 de junio de 1959 (29 L.P.R.A. secs. 146-151), se usó el concepto despido constructivo contemplado en la Ley 80.

 Departamento del Trabajo y Recursos Humanos, Guía revisada para la interpretación y aplicación de la Ley Núm. 80, aprobada el 30 de mayo de 1976, según enmendada, 1996 (Guía Revisada).

 íd., pág. 22.

 íd., pág. 23.

 Véase Zeno Santiago, supra, pág. 218.

 Regla 301(a) de Evidencia de 2009 (32 L.RR.A. Ap. VI). Esta regla es aná-loga a la Regla 13(a) de 1983.

 E.L. Chiesa Aponte, Reglas de Evidencia de Puerto Rico 2009, San Juan, Pubs. J.T.S., 2009, pág. 109. Véase, además, Díaz v. Wyndham Hotel Corp., supra, pág. 385.

 Chiesa Aponte, op. cit, pág. 110.

 Regla 302 de Evidencia de 2009 (32 L.P.R.A. Ap. VI).

 Chiesa Aponte, op. cit., pág. 110.

 McCrillis v. Aut. Navieras de P.R., 123 D.P.R. 113, 141 (1989).

 Díaz v. Wyndham Hotel Corp., supra, pág. 386.

 íd.

 Alberty v. Bco. Gub. de Fomento, 149 D.P.R. 655, 667 (1999), opinión concu-rrente del Juez Asociado Señor Negrón García.

 Para demostrar este hecho base, bastará con cumplir con las exigencias de la Regla 110 de Evidencia de 2009 (32 L.P.R.A. Ap. VI).

 Sandoval v. Caribe Hilton, 149 D.P.R. 582, 603 (1999), opinión de conformi-dad del Juez Asociado Señor Fuster Berlingeri.

 Chiesa Aponte, op. cit, pág. 98.

 La casuística federal estadounidense está en sintonía con este esquema. En Johnson v. Shalala, 991 F. 2d 126 (4to Cir. 1993), el Tribunal de Apelaciones federal se enfrentó a un caso donde se alegaba despido constructivo. Al desestimar la acción, sostuvo que no se presentó evidencia suficiente para establecer que la renuncia fue, en efecto, un despido constructivo. En Rivera v. DHL Global Forwarding, 536 F. Supp.2d 148 (2008), el Tribunal de Distrito federal sostuvo que el demandante no logró probar ni demostrar que las condiciones de empleo eran de tal magnitud que equipararan su renuncia a un despido tácito.

 Regla 110(f) de Evidencia, 32 L.RR.A. Ap. VI.

 R. Emmanuelli Jiménez, Prontuario de derecho probatorio puertorriqueño, 3ra ed., San Juan, Ediciones SITUM, 2010, pág. 121. El autor también sostiene que es importante tener en mente que las presunciones tienen un efecto muy importante en el peso de la prueba. íd.

 Chiesa Aponte, Tratado de derecho probatorio: Reglas de Evidencia de Puerto Rico y federales, República Dominicana, Ed. Corripio, 1998, T. II, pág. 1088; Díaz v. Wyndham Hotel Corp., supra, pág. 385.

 Emmanuelli Jiménez, op. cit., págs. 121-122.

 íd., pág. 122.

 Chiesa Aponte, Tratado, op. cit., pág. 1095. Véase Díaz v. Wyndham Hotel Corp., supra, pág. 385. En su Tratado de Derecho Probatorio, op. cit., pág. 1114, el profesor Chiesa Aponte menciona como ejemplo de esto la presunción establecida por la Ley 80.

 Belk v. Martínez, supra, pág. 231.

 S.L.G. Hernández Beltrán v. TOLIC, supra.

 íd., págs. 49-50.

 S.L.G. Hernández Beltrán v. TOLIC, supra, págs. 774-775. En cuanto al elemento base del despido, la Guía Revisada, supra, pág. 49, expone: “De negar el patrono la existencia de la relación empleado-patrono o de negar el despido, el em-pleado tiene la obligación inicial de probar esto. A esos efectos, debe prestar eviden-cia admisible que acredite la existencia de la relación empleado-patrono o la existen-cia del despido. Probado[s] estos hechos, entonces se invierte el peso de la prueba hacia el patrono!,] el cual tiene la obligación de establecer que el despido es uno justificado.” Esto aplica igualmente a una causa de acción por despido constructivo que “sólo procede en aquellas instancias donde la prueba demuestra mediante infe-rencia razonable que la única alternativa del empleado es dejar su puesto”. (Énfasis suplido.) Zeno Santiago, supra, pág. 219.

 32 L.P.R.A. Ap. V.

 Romero Arroyo y otros v. E.L.A., 139 D.P.R. 576, 579 (1995).

 Roselló Cruz v. García, 116 D.P.R. 511, 520 (1985).

 Monllor v. Soc. de Gananciales, 138 D.P.R. 600, 610 (1995).

 Méndez v. Morales, 142 D.P.R. 26, 36 (1996).

 Díaz v. Tribunal Superior, 93 D.P.R. 79, 83 (1966).

 Incluso, en este caso, tres de once vendedores renunciaron.