Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL V

| | | |
|---|---|---|
| BANCO POPULAR DE PUERTO RICO<br><br>Demandante-Apelante<br><br>v.<br><br>RAFAEL DOITTEAU CRUZ E YSIS DOITTEAU COFRESÍ<br><br>Demandados-Apelados | KLCE202201211 | *Certiorari* acogido como Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Cabo Rojo<br><br>Civil Núm.: CB2019CV00124<br><br>Sobre: Cobro de Dinero |

Panel integrado por su presidente, el Juez Hernández Sánchez, la Jueza Santiago Calderón y la Jueza Álvarez Esnard

Santiago Calderón, Jueza Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 28 de junio de 2024.

Comparece el Banco Popular de Puerto Rico (BPPR o parte apelante), mediante *Recurso de Certiorari,* acogido como apelación, presentado el 4 de noviembre de 2022 y nos solicita la revocación de la *Sentencia Parcial* emitida el 10 de agosto de 2022, notificada el 22 de agosto de 2022, por el Tribunal de Primera Instancia, Sala Superior de Cabo Rojo (TPI o foro primario). Mediante el referido dictamen, el foro primario declaró No Ha Lugar la *Demanda* presentada por la parte apelante y le impuso a esta última el pago de $1,500.00 en concepto de honorarios de abogado por temeridad.

El 2 de septiembre de 2022, el BPPR presentó una *Reconsideración de Sentencia Parcial,* la cual fue declarada No Ha Lugar mediante *Resolución* emitida el 5 de octubre de 2022, notificada al día siguiente.

Por los fundamentos que exponemos a continuación, **confirmamos** el dictamen apelado.

Número Identificador

SEN2024_____

**I.**

El 8 de marzo de 2019, el BPPR presentó una *Demanda*[1] sobre cobro de dinero contra el señor Rafael Doitteau Cruz (señor Doitteau Cruz) y la señora Ysis Doitteau Cofresí (señora Doitteau Cofresí) (en conjunto, parte apelada). En esta, alegó que, por concepto de la cuenta de línea de crédito número 0000164021051, la parte apelada le adeudaba la suma de $13,000.00. Además, reclamó una cuantía de $1,300.00 por honorarios de abogados, costas y gastos. También, reclamó la deuda por concepto de tarjeta de crédito, la cual se identifica con el número 5310-5400-0417-6003 por la cantidad de $17,254.56, más costas, gastos y $1,225.46 por honorarios de abogado.

El 22 de julio de 2019, la señora Doitteau Cofresí presentó *Contestación a Demanda y Reconvención*[2]. Referente a la cuenta de línea de crédito con número 0000164021051, alegó que dicha línea fue solicitada, aprobada y otorgada al señor Doitteau Cruz cuando la compareciente era menor de edad; que no fue titular de dicho instrumento; y, que el señor Doitteau Cruz la incluyó solo como firmante autorizada. En síntesis, adujo que no solicitó préstamo, ni firmó contrato de préstamo y que nunca ha solicitado una línea de crédito con el BPPR. Por tanto, sostuvo que la responsabilidad de pago de la línea de crédito no le corresponde. En cuanto a la tarjeta de crédito número 5310-5400-0417-6003, adujo que no es titular de la tarjeta, presentó reconvención y solicitó al TPI una partida por concepto de daños por angustias mentales equivalentes a unos $15,000.00.

Por su parte, el 5 de agosto de 2019, el señor Doitteau Cruz presentó su *Contestación a Demanda*[3], en la que negó la mayoría de

---

[1] Apéndice del recurso, págs. 1-2.
[2] Apéndice del recurso, págs. 12-14.
[3] Apéndice del recurso, págs. 16-18.

las alegaciones instadas en la demanda y esbozó varias defensas afirmativas.

El 6 de noviembre de 2019, el BPPR compareció mediante *Contestación a Reconvención* instada por la señora Doitteau Cofresí. En síntesis, negó la mayoría de las alegaciones. Además, aceptó que la cuenta fue abierta siendo la codemandada menor de edad; sin embargo, adujo que la línea de crédito fue solicitada y aprobada siendo la dama mayor de edad y a esos efectos firmó en la misma. Ante ello, sostuvo que la señora Doitteau Cofresí es responsable de la deuda reclamada en cuanto a la línea de crédito.

El 12 de noviembre de 2020, la señora Doitteau Cofresí presentó una *Moción en Solicitud de Sentencia Sumaria*[4]. Por su parte, el 16 de diciembre de 2020, el BPPR sometió *Réplica a: Moción de Sentencia Sumaria*[5].

Luego de varios trámites procesales, el 4 de enero de 2021, se presentó ante el TPI el *Informe de Conferencia con Antelación al Juicio*[6]*,* en el cual el BPPR enmendó la *Demanda* a los efectos de notificar que desistió contra la señora Doitteau Cofresí la reclamación previamente presentada con relación a la deuda de tarjeta de crédito 5310-5400-0417-6003, por la cantidad de $17,254.56, más costas, gastos y $1,225.46 por concepto de honorarios de abogado.

El 12 de agosto de 2021, el TPI emitió y notificó una *Resolución*[7], en la que declaró No Ha Lugar la *Moción en Solicitud de Sentencia Sumaria* presentada por la señora Doitteau Cofresí. El foro primario determinó que no existe controversia sobre los siguientes hechos materiales:

1. La parte demandante presentó una demanda alegando que la codemandada Ysis Doitteau Cofresí adeuda a la parte demandante, por concepto de cuenta de línea de

---

[4] Apéndice del recurso, págs. 22-35.
[5] Apéndice del recurso, págs. 38-39.
[6] Apéndice del recurso, págs. 40-56.
[7] Apéndice del recurso, págs. 57-59.

crédito 000164021051, la suma de $13,000.00, las costas y gastos del caso y la suma de $1,300.00 por concepto de honorarios de abogado; y por concepto de Tarjeta de Crédito 5310-5400-0417-6003, la suma de $17,254.56 Ud, [sic] las costas y gastos del caso más la suma de $1,725.46 por concepto de honorarios de abogado.

2. La parte demandante presentó una demanda alegando que la codemandada Doitteau Cofresí ha incumplido con "los términos del préstamo", por lo que la obligación se declaraba vencida en su totalidad siendo líquida y exigible en Derecho.

3. Que la parte codemandada Doitteau Cofresí nació en Mayagüez Puerto Rico el 14 de julio de 1982.

4. En el documento PRIMER INTERROGATORIO Y SOLICITUD DE PRODUCCI[Ó]N DE DOCUMENTOS, cursado a la parte demandante por la codemandada Doitteau Cofresí el 22 de julio de 2019, esta solicitó a la parte demandante Banco Popular de Puerto Rico que proveyera copia de todos los documentos o evidencia real, demostrativa, científica, electrónica o de otra naturaleza que estableciera lo siguiente:

> a. una relación contractual o de negocios entre la codemandada Doitteau Cofresí y Banco Popular de Puerto Rico, con relación a la línea de crédito del Banco Popular de Puerto Rico número 0000164021051 y la tarjeta de crédito del Banco Popular de Puerto Rico número 5310-5400-0417-6003.

> b. los reportes informados a las agencias crediticias o *Credit Bureau* con relación a la línea de crédito del Banco Popular de Puerto Rico número 0000164021051, en relación a la tarjeta de crédito del Banco Popular de Puerto Rico número 5310-5400-0417-6003 y con relación a la actividad económica de la codemandada Doitteau Cofresí para los años 2014 al 2019.

> c. la solicitud, aprobación, balance de línea de crédito aprobada, compromiso de pago, contrato de servicio y/o de préstamo (con todas sus enmiendas), notificaciones o decisiones del Banco Popular sobre disminución de crédito con relación a la línea de crédito del Banco Popular número 0000164021051 y de la tarjeta de crédito 5310-5400-0417-6003 del Banco Popular.

5. La línea de crédito del Banco Popular número 0000164021051 no constaba en el historial crediticio de la codemandada Doitteau Cofresí a la fecha del 21 de agosto de 2017.

6. Que el Banco Popular de Puerto Rico informó a las agencias crediticias una delincuencia en relación con la línea de crédito del Banco Popular número 0000164021051.

7. La codemandada Doitteau Cofresí no firmó contrato de préstamo ni servicio en relación con la tarjeta de crédito 5310- 5400-0417-6003.

8. La codemandada Doitteau Cofresí nunca ha solicitado una tarjeta de crédito con el Banco Popular de Puerto Rico.

9. La codemandada Doitteau Cofresí no es titular de la tarjeta de crédito 5310-5400-0417-6003.

10. El Banco Popular, en algún momento entre las fechas del 21 de agosto de 2017 y 07 de noviembre de 2019, informó a las agencias crediticias o *Credit Bureau* que la línea de crédito del Banco Popular número 0000164021051 era responsabilidad de la codemandada Doitteau Cofresí.

11. El Banco Popular de Puerto Rico informó a las agencias crediticias una delincuencia con relación a la línea de crédito del Banco Popular número 0000164021051.

Por otra parte, el TPI razonó que los siguientes hechos estaban realmente controvertidos:

a. Cuándo fue que se solicitó la cuantía de 13,000 de la cuenta 0000164021051, ya que la demandante en su contestación a interrogatorio indicó que fue solicitada en el 2014. La prueba documental presentada en la réplica establece otra fecha.

b. Si la codemandada prestó su consentimiento en la cuenta 0000164021051 en el año 2010 para la línea de crédito.

c. El daño que se ha ocasionado a la codemandada por el reporte a las agencias de crédito sobre incumplimiento de las dos cuentas originalmente objeto de esta controversia.

d. Todo lo concerniente a la prueba documental solicitada por la parte codemandada en el descubrimiento de prueba, sus objeciones y si estaban disponibles o no al momento de ser solicitadas al demandante.

Así las cosas, el 10 de agosto de 2022, el TPI celebró vista en su fondo y en esta misma fecha dictó la *Sentencia Parcial*[8] aquí apelada, en la que declaró No Ha Lugar la demanda en cobro de dinero. Además, le impuso al BPPR el pago de $1,500.00 en concepto de honorarios de abogado por temeridad y ordenó la continuación del pleito en cuanto al señor Doitteau Cruz y la reconvención presentada por la señora Doitteau Cofresí contra el BPPR. Particularmente, el TPI indicó lo siguiente en su dictamen:

> En cuanto a la deuda referente a la línea de crédito reclamada en la demanda la prueba testifical del demandante Banco Popular de Puerto Rico consistió en el testimonio de la Sra. Doris Vilchez N[ú]ñez y el de la codemandada Ysis Doitteau Cofresí. La prueba documental admitida como evidencia consistió en el *Exhibit I*, Estados de Cuentas de la Multicuenta y del *Exhibit II*, Estados de Cuentas de la Tarjeta. La parte demandante, a tenor con la

---

[8] Apéndice del recurso, págs. 133-138. La *Sentencia Parcial* fue notificada el 22 de agosto de 2022.

Regla 104 (B) de Evidencia realizó una oferta de prueba, de un documento que no fue admitido por el Tribunal. En este documento aparece la codemandada Ysis Doitteau Cofresí, firmando como depositante en la cuenta.

Luego del demandante, Banco Popular de Puerto Rico, haber dado por sometido su caso y habiendo la codemandada Ysis Doitteau Cofresí solicitado que en cuanto a ella se declarase un *"non suit"*, es decir, una desestimación contra la prueba, este Tribunal determina que de la evidencia admitida en el presente caso se desprende una ausencia total de prueba a los efectos de que la codemandada Ysis Doitteau haya solicitado o prestado su consentimiento para la línea de crédito de la cuenta 00001164021051 del Banco Popular, cuyo balance de $13,000.00 se reclama en la demanda, ni que haya firmado contrato alguno, o exista relación contractual alguna sobre solidaridad en relación a la responsabilidad sobre dicha línea de crédito.

Oportunamente, el 2 de septiembre de 2022, el BPPR presentó *Reconsideración de Sentencia Parcial*[9]. En su escrito, adujo que durante el juicio en su fondo, el BPPR realizó oferta de prueba en relación con dos documentos adicionales relacionados a la línea de crédito 00001164021051. Añadió que, para la autenticación de dichos documentos, la parte apelante presentó como testigo a la señora Doris J. Vilches Núñez (señora Vilches Núñez), empleada de BPPR. Por tanto, sostuvo que incidió el TPI al excluir dichos documentos por entender que constituían prueba de referencia.

El 5 de octubre de 2022, notificada al día siguiente, el TPI emitió una *Resolución* en la que declaró No Ha Lugar la solicitud de reconsideración presentada por el BPPR[10].

Inconforme aún, el 4 de noviembre de 2022, el BPPR acudió ante nos mediante el recurso de epígrafe en el que señaló al TPI la comisión de los siguientes errores:

PRIMERO: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL EXCLUIR EVIDENCIA QUE FUE CORRECTAMENTE IDENTIFICADA Y AUTENTICADA POR LA TESTIGO DE LA PARTE RECURRENTE.

SEGUNDO: ERRÓ EL TPI AL EXCLUIR EVIDENCIA AL AMPARO DE LA REGLA 901 COMO RÉCORD ELECTRÓNICO CUANDO LA PRUEBA QUE FUE OFRECIDA ERA RÉCORD DE NEGOCIO Y ASÍ FUE IDENTIFICADA Y AUTENTICADA POR LA TESTIGO.

TERCERO: ERRÓ EL TPI AL APLICAR LA REGLA 108 DE EVIDENCIA CUANDO DICHA REGLA VA DIRIGIDA AL ORDEN DE PRESENTACIÓN DE LA PRUEBA EN EL JUICIO Y NO A LA ADMISIBILIDAD Y PERTINENCIA DE LA MISMA.

---

[9] Apéndice del recurso, págs. 139-145.
[10] Apéndice del recurso, pág. 152.

CUARTO: ERRÓ EL TPI AL NO TOMAR EN CONSIDERACIÓN EL TESTIMONIO DE LA TESTIGO EN RELACIÓN A LA DEUDA.

QUINTO: ERRÓ EL HONORABLE TRIBUNAL AL PERMITIR UN "VOIR DIRE" PARA CADA UNO DE LOS DOCUMENTOS OFRECIDOS EN EVIDENCIA CUANDO EL PROCEDIMIENTO CORRECTO ERA REALIZAR UNO PARA VERIFICAR SI LA TESTIGO CUALIFICABA PARA IDENTIFICAR Y AUTENTICAR LOS DOCUMENTOS QUE SE PRESENTABAN.

SEXTO: ERRÓ EL HONORABLE TPI AL IMPONER TEMERIDAD A LA PARTE DEMANDANTE-RECURRENTE CUANDO LA EVIDENCIA ERRÓNEAMENTE EX[C]LUIDA DEMOSTRABA LA SOLIDARIDAD DE LA CODEMANDADA YSIS DOITTEAU.

Luego, el 14 de diciembre de 2022, el BPPR compareció mediante *Escrito Solicitando Paralización por Quiebra*, en el que adujo que el banco fue notificado de que el señor Doitteau Cruz presentó una solicitud de protección ante el Tribunal de Quiebras, caso número 22-03443, Capítulo 7. Además, acompañó su escrito con un documento intitulado *Official Form 309 B (For Individuals or Joint Debtors) Notice of Chapter 7 Bankruptcy Case – Proof of Claim Deadline Set*. Por tanto, el BPPR solicitó a este Tribunal de Apelaciones la paralización parcial del presente caso.

En esta misma fecha, emitimos una *Resolución* en la que se ordenó la paralización automática de los procedimientos judiciales y, en consecuencia, el archivo administrativo de este asunto.

El 19 de diciembre de 2022, la parte apelante solicitó reconsideración, a los fines de continuar los procedimientos en cuanto a la señora Doitteau Cofresí. En consecuencia, el 18 de enero de 2023, se dejó sin efecto la paralización automática en cuanto a dicha parte y se ordenó la continuación de los procedimientos.

Posteriormente, el 12 de abril de 2024, la señora Doitteau Cofresí presentó una *Moción Urgente en Solicitud de Desestimación*. En esencia, expuso que el BPPR condonó las deudas principales reclamadas en la *Demanda* sobre cobro de dinero, por lo que se

extinguieron las obligaciones[11]. Ante ello, solicitó la desestimación del recurso de epígrafe por haberse tornado académico.

El 18 de abril de 2024, emitimos una *Resolución* en la que concedimos un término de diez (10) días a BPPR para expresarse en torno a la moción presentada por la señora Doitteau Cofresí.

Seguidamente, el 22 de abril de 2024, el BPPR compareció mediante *Escrito en Cumplimiento de Orden*. Alegó que **al señor Doitteau Cruz se le otorgó el correspondiente descargo por quiebra**, por lo cual, la parte apelante presentó los Formularios 480.6D del Departamento de Hacienda del Gobierno de Puerto Rico. Sin embargo, BPPR sostuvo que no ha condonado la deuda de la señora Doitteau Cofresí.

En esta misma fecha, el señor Doitteau Cruz compareció mediante *Moción en Cumplimiento de Orden y Solicitud de Desestimación*, en la que indicó que el Tribunal de Quiebras le concedió el descargo de las deudas alegadas en el caso. El señor Doitteau Cruz incluyó un documento intitulado *Orden of Discharge* emitida el 6 de marzo de 2023 por el Tribunal de Quiebras en el caso 22-03443. Añadió que, el BPPR también informó sobre la condonación de la deuda en los Formularios 480.6D del Departamento de Hacienda del Gobierno de Puerto Rico.

El 23 de abril de 2024, emitimos una *Resolución* en la que declaramos No Ha Lugar la *Moción Urgente en Solicitud de Desestimación* instada por la señora Doitteau Cofresí.

Luego, el 20 de mayo de 2024, la señora Doitteau Cofresí presentó *Oposición a Recurso de Apelación*. En síntesis, adujo que, la evidencia ofrecida y admitida en juicio, presentada por el BPPR,

---

[11] La señora Doitteau Cofresí incluyó copia de dos Formularios 480.6D del Departamento de Hacienda del Gobierno de Puerto Rico, correspondiente al año contributivo 2023. En ambos Formularios se identifica al BPPR como pagador y al señor Doitteau Cruz como la persona que recibe el pago. Además, en el encasillado 19 de cada formulario, sobre condonación de deudas, se indicó la suma de $17,254.56 y $13,000.00, respectivamente.

conforme al derecho aplicable, no sostuvo sus alegaciones. Añadió que los documentos ofrecidos en evidencia y excluidos por el TPI no evidencian un contrato de servicio y/o préstamo, en el cual la señora Doitteau Cofresí haya pactado expresamente ser solidariamente responsable junto con el señor Doitteau Cruz de las deudas reclamadas en la *Demanda*.

Con el beneficio de la comparecencia de ambas partes y la transcripción de la prueba oral estipulada, procedemos a resolver.

**II.**

**-A-**

Las Reglas 104, 105 y 106 de Evidencia[12] establecen los requisitos que debe satisfacer una parte que arguye en apelación que el foro de instancia excluyó indebidamente alguna prueba. La Regla 104, *supra*, dispone lo siguiente:

> (a) Requisito de objeción. — La parte perjudicada por la admisión errónea de evidencia debe presentar una objeción oportuna, específica y correcta o una moción para que se elimine del récord evidencia erróneamente admitida cuando el fundamento para objetar surge con posterioridad. Si el fundamento de la objeción surge claramente del contexto del ofrecimiento de la evidencia, no será necesario aludir a tal fundamento.
>
> (b) Oferta de prueba. — En el caso de exclusión errónea de prueba, la parte perjudicada deberá invocar el fundamento específico para la admisibilidad de la evidencia ofrecida y hacer una oferta de prueba de forma que surja claramente cuál es la evidencia que ha sido excluida y la naturaleza, propósito y pertinencia para la cual se ofrece. No será necesario invocar tal fundamento específico ni hacer la oferta de prueba cuando resultan evidentes del contexto del ofrecimiento.
>
> El tribunal permitirá la oferta de prueba y determinará si debe hacerse mediante un resumen de la evidencia ofrecida o el interrogatorio correspondiente. El tribunal podrá añadir cualquier manifestación que demuestre el carácter de la evidencia, la forma en que fue ofrecida, la objeción a su admisión y la resolución sobre la exclusión.
>
> (c) Objeción u oferta de prueba continua. — Una vez el tribunal dicta una resolución definitiva en el récord, para admitir o excluir prueba, ya sea antes o durante el juicio, una parte no tiene que renovar una objeción u oferta de prueba para conservar su derecho a plantear el asunto en apelación.
> […]

---

[12] 32 LPRA Ap. VI, R. 104, R. 105 y R. 106.

Por su parte, en lo relativo al efecto de error en la admisión o exclusión de evidencia, la Regla 105, *supra*, expresa lo siguiente:

(a) Regla general. — No se dejará sin efecto una determinación de admisión o exclusión errónea de evidencia ni se revocará por ello sentencia o decisión alguna a menos que:

(1) La parte perjudicada con la admisión o exclusión de evidencia hubiere satisfecho los requisitos de objeción, fundamento u oferta de prueba establecidos en la Regla 104, y

(2) **el tribunal que considera el señalamiento estime que la evidencia admitida o excluida fue un factor decisivo o sustancial en la sentencia emitida o decisión cuya revocación se solicita.**

(b) Error constitucional. — Si el error en la admisión o exclusión constituye una violación a un derecho constitucional de la persona acusada, el tribunal apelativo sólo confirmará la decisión si está convencido más allá de duda razonable que, de no haberse cometido el error, el resultado hubiera sido el mismo.

De otra parte, la Regla 106, *supra,* establece lo siguiente:

Un tribunal apelativo podrá considerar un señalamiento de error de admisión o exclusión de evidencia y revocar una sentencia o decisión, aun cuando la parte que hace el señalamiento no hubiera satisfecho los requisitos establecidos en la Regla 104, si:

(a) El error fue craso ya que no cabe duda de que fue cometido; (b) el error fue perjudicial porque tuvo un efecto decisivo o sustancial en la sentencia o decisión cuya revocación se solicita, y

(c) el no corregirlo resulte en un fracaso de la justicia.

Sobre los propósitos de las Reglas 104, 105 y 106, *supra*, el profesor Ernesto L. Chiesa comenta lo siguiente:

Estas Reglas deben ser examinadas en conjunto, pues regulan el mismo asunto: el efecto de admisión o exclusión errónea de evidencia. En gran medida, se trata de unas reglas dirigidas a los tribunales apelativos en relación con las normas que determinan cuándo procede la revocación de una resolución o sentencia del Tribunal de Primera Instancia por razón de haberse admitido o excluido erróneamente cierta evidencia. Por otro lado, las reglas también regulan lo relativo a las objeciones y a la oferta de prueba, zona del Tribunal de Primera Instancia[13].

La Regla 105, *supra*, recoge la doctrina del error perjudicial. Esta establece que solamente los errores sustancialmente perjudiciales a la parte afectada conllevan la revocación de un

---

[13] E.L. Chiesa Aponte, *Reglas de Evidencia de Puerto Rico 2009,* San Juan, Publicaciones JTS, 2009, pág. 83.

dictamen, **siempre que hubiera mediado oportuna y bien fundada objeción en el Tribunal de Instancia**[14]. Claro está, es medular que la parte cumpla con plantear ante el foro primario la objeción correspondiente. Es decir, la Regla 105 debe analizarse en conjunto con lo articulado en la Regla 104. El profesor Chiesa señala que:

> Las partes tienen el deber de hacer el planteamiento correspondiente en instancia, para dar oportunidad al juez de resolver conforme al derecho aplicable. Evidencia admitida sin objeción, aunque erróneamente, no será fundamento para dejar sin efecto una resolución o sentencia. Igual ocurre con **la exclusión errónea de evidencia si no hubo el correspondiente señalamiento en instancia, con oferta de prueba**[15]. (Énfasis nuestro).

Por consiguiente, **el foro revisor debe considerar "el impacto del error cometido sobre el resultado al que llegó el juzgador, pues es posible que se cometa un error de derecho probatorio y que el tribunal evaluador considere que dicho error no tuvo efecto significativo sobre el resultado del caso, por lo que confirme el dictamen a pesar del error**"[16]. (Énfasis nuestro). En ese caso se trataría de un error judicial de carácter no perjudicial ("*harmless error*"). En cambio, de concluirse que si el error no se hubiera cometido el resultado sería diferente, entonces procede revocar la sentencia.

Así pues, para determinar si procede revocar un dictamen por la admisión o exclusión errónea de evidencia precisa evaluar si dicha prueba "pudo haber tenido una influencia notable, determinante, y hasta desmedida" en la mente del juzgador de los hechos o, que independientemente del resto de la prueba presentada en juicio, de no haberse admitido esa evidencia, el resultado del caso probablemente hubiese sido distinto[17].

---

[14] *Pueblo v. Santos Santos,* 185 DPR 709, 727–728 (2012).
[15] Chiesa Aponte, *op. cit.,* pág. 87.
[16] *Íd.*, pág. 728.
[17] *Pueblo v. Rosaly Soto,* 128 DPR 729, 745–746 (1991).

**-B-**

Las Reglas de Procedimiento Civil permiten al demandado presentar una solicitud para desestimar la demanda, luego de presentada la prueba del demandante, fundamentada en que este no tiene derecho a remedio alguno, según los hechos probados y el derecho aplicable. A estos efectos, la Regla 39.2(c) de las de Procedimiento Civil[18], regula la moción de desestimación contra la prueba, también conocida como moción de *non-suit.* Dicha regla establece, en lo pertinente, lo siguiente:

> Después que la parte demandante haya terminado la presentación de su prueba, la parte demandada, sin renunciar al derecho de ofrecer prueba en caso de que la moción sea declarada 'sin lugar', podrá solicitar la desestimación fundándose en que bajo los hechos hasta ese momento probados y la ley, la parte demandante no tiene derecho a la concesión de remedio alguno. El tribunal podrá entonces determinar los hechos y dictar sentencia contra la parte demandante, o podrá negarse a dictar sentencia hasta que toda la prueba haya sido presentada. [...].

Al interpretar la Regla 39.2(c) de las de Procedimiento Civil, *supra,* el Tribunal Supremo ha señalado lo siguiente:

> En una moción al amparo de la Regla 39.2(c), conocida como una moción contra la prueba o *non-suit*, el tribunal está autorizado, luego de la presentación de prueba por parte del demandante, a aquilatar la misma y a formular su apreciación de los hechos, según la credibilidad que le haya merecido la evidencia. Pero esa facultad debe ejercitarse después de un escrutinio sereno y cuidadoso de la prueba. <u>En caso de duda, debe requerirse al demandado que presente su caso</u>. En ese momento, le corresponde al tribunal determinar si la prueba presentada por la parte demandante es suficiente por sí misma para satisfacer los requisitos de su particular causa de acción. Dado que la desestimación bajo la Regla 39.2(c) se da contra la prueba, la decisión del tribunal dependerá de su apreciación de la evidencia presentada[19].

Es decir, para que proceda acoger la petición de *non-suit,* no debe existir duda en el ánimo del juzgador de que el demandante no tiene derecho a la concesión de remedio alguno. Ello, luego de aquilatar la prueba y formular su apreciación de los hechos, según la credibilidad que le hayan merecido la prueba del demandante[20].

---

[18] 32 LPRA Ap. V, R. 39.2 (c).
[19] Véase, *Rivera Figueroa v. The Fuller Brush Co.,* 180 DPR 894, 916 (2011).
[20] *Romero Arroyo y otros v. E.L.A.,* 139 DPR 576, 579 (1995); *Roselló Cruz v. García,* 116 DPR 511, 520 (1985).

Por el contrario, cuando no proceda la desestimación de la demanda contra la prueba presentada, el Tribunal Supremo ha establecido la hoja de ruta procesal que debe seguir el juzgador. Veamos:

> Ahora bien, establecida la improcedencia de una solicitud de desestimación al amparo de las disposiciones de la antes mencionada Regla 39.2 (c) de Procedimiento Civil, lo procedente en derecho es que el tribunal de instancia reciba la prueba o evidencia que la parte demandada tenga a bien presentarle.
>
> Sobre este particular, conviene puntualizar que la Regla 39.2 (c), ante, es clara al establecer que, al presentar una moción de desestimación por este fundamento, *el demandado no renuncia a presentar su prueba en caso de que la moción sea declarada 'sin lugar'*. Debe mantenerse presente *la máxima de que la 'esencia del debido proceso de ley es que nadie sea privado de su propiedad sin darle la oportunidad de ser oído*[21]'. Este derecho incluye, desde luego, *la oportunidad de presentar evidencia*[22].
>
> Resulta patentemente claro, en consecuencia, que *lo procesalmente correcto* es que se *devuelva* el caso al tribunal de instancia para que la parte demandada tenga oportunidad —si es que ésta así lo entiende procedente— de presentar su prueba, *luego de lo cual el foro de instancia deberá resolver el caso en los méritos*; esto es, deberá decidir si declara 'con lugar' o 'sin lugar' la demanda radicada[23]. [Nota al calce omitida].

**-C-**

En nuestro ordenamiento jurídico, las obligaciones con múltiples deudores pueden ser mancomunadas o solidarias[24].

En las obligaciones mancomunadas, la deuda puede ser dividida y cada deudor ha de cumplir con su parte de forma independiente. En las obligaciones solidarias, cada acreedor tiene derecho a pedir y cada deudor tiene el deber de realizar íntegramente la prestación debida[25]. No obstante, "[l]a regla que impera en materia de derecho civil es que la solidaridad no se presume"[26].

La concurrencia de dos o más acreedores o de dos o más deudores en una sola obligación no implica que cada uno de

---

[21] *Carrero Suárez v. Sánchez López*, 103 DPR 77, 78 (1974).
[22] *Pagán v. Registrador*, 62 DPR 594, 597 (1943).
[23] *Lebrón v. Díaz*, 166 DPR 89, 94-95 (2005) (*Per Curiam*).
[24] *Fraguada Bonilla v. Hosp. Aux. Mutuo*, 186 DPR 365, 375 (2012).
[25] *Pérez et al. v. Lares Medical et al.*, 207 DPR 965, (2021).
[26] *Fraguada Bonilla v. Hosp. Aux. Mutuo, supra,* pág. 375.

aquéllos tenga derecho a pedir ni cada uno de éstos deba prestar íntegramente las cosas objeto de esta. Sólo habrá lugar a esto cuando la obligación expresamente lo determine, constituyéndose con el carácter de solidaria[27]. Es decir, la mancomunidad se considera la regla, mientras que la solidaridad es una excepción que surge sólo si se pacta expresamente[28]. Por tanto, una obligación no se considera solidaria a menos que se desprenda "de manera clara y evidente del contrato"[29].

Finalmente, nuestro Tribunal Supremo ha dispuesto que para que exista solidaridad contractual, ésta (i) se debió haber pactado expresamente, o; (ii) debe surgir claramente del contenido del contrato en cuestión, que la relación entre las partes se constituyó con carácter solidario[30].

**-D-**

En ausencia de circunstancias extraordinarias, o indicios de pasión, prejuicio, parcialidad o error manifiesto, la apreciación de la prueba realizada por el Tribunal de Primera Instancia merece deferencia y respeto por parte del Tribunal de Apelaciones[31]. Este Tribunal deberá prestar la debida deferencia a la apreciación de los hechos y la prueba efectuada por el juzgador, por ser el foro más idóneo para llevar a cabo esa función[32]. No debemos descartar esa apreciación, incluso cuando según nuestro criterio hubiéramos emitido un juicio distinto con la misma prueba[33]. Los dictámenes emitidos por los tribunales gozan de una presunción de validez y corrección[34].

---

[27] 31 LPRA ant. sec. 3101.
[28] *Fraguada Bonilla v. Hosp. Aux. Mutuo, supra,* pág. 375.
[29] *Rodríguez v. K-mart,* 163 DPR 335, 340 (2004).
[30] *General Accd. Ins. Co. PR v. Ramos,* 148 DPR 523, 537 (1999).
[31] *Dávila Nieves v. Meléndez Marín,* 187 DPR 750, 771 (2013); *Argüello v. Argüello,* 155 DPR 62 (2001); *Trinidad v. Chade,* 153 DPR 280, 289 (2001).
[32] *McConnell v. Palau,* 161 DPR 734 (2004).
[33] *Argüello v. Argüello, supra; Trinidad v. Chade, supra.*
[34] *Cortés Piñeiro v. Sucesión A. Cortés,* 83 DPR 685, 690 (1961); *SLG Rivera Carrasquillo v. AAA,* 177 DPR 345, 357 (2009).

Es norma reiterada para este Tribunal que las determinaciones del Tribunal de origen no deben ser descartadas arbitrariamente ni sustituidas por el criterio del Tribunal Apelativo a menos que éstas carezcan de base suficiente en la prueba presentada[35]. La intervención del foro apelativo con esa prueba tiene que estar basada en un análisis independiente de la prueba desfilada y no a base de los hechos que exponen las partes[36].

Es axioma elemental en la tarea de hacer justicia que los hechos determinan el derecho y que para juzgar hay que conocer[37]. Así pues, en la argumentación de errores el apelante tiene la obligación de poner en posición al foro apelativo de aquilatar y justipreciar el error anotado[38].

**-E-**

En el ámbito del derecho probatorio nuestro ordenamiento jurídico y legal establece que, para ser admisible toda evidencia, además de pertinente, debe ser autenticada. Así, para que una evidencia sea admitida, la parte proponente viene obligada a efectuar su autenticación[39]. A estos efectos, la Regla 901 (A) de las de Evidencia[40], dispone que "[e]l requisito de autenticación o identificación como una condición previa a la admisibilidad se satisface con la presentación de evidencia suficiente para sostener una determinación de que la materia en cuestión es lo que la persona proponente sostiene". Autenticar una pieza de evidencia es probar que la misma es lo que su proponente alega que es[41]. En ello

---

[35] *Pueblo v. Maisonave,* 129 DPR 49, 62 (1991) y *Rivera Menéndez v. Action Service,* 185 DPR 431, 448 (2012).
[36] *Hernández v. San Lorenzo Const.,* 153 DPR 405, 425 (2001).
[37] *Andino v. Topeka, Inc.,* 142 DPR 933, 938 (1997).
[38] *Morán v. Marti,* 165 DPR 356, 366 (2005).
[39] *Pueblo v. Bianchi Alvarez,* 117 DPR 484 (1986).
[40] 32 LPRA Ap. VI, R. 901 (A).
[41] *Pueblo v. Echevarría Rodríguez I,* 128 DPR 299 (1991); Chiesa Aponte, *op. cit.,* pág. 345.

hay que incluir todo lo que se genera o envía mediante la tecnología, la evidencia digital[42].

Para satisfacer el requisito básico de autenticación que establece la Regla 901 (a), nuestro ordenamiento legal identifica, en el inciso (b) de la propia Regla 901, a modo de ejemplos, varias formas de autenticar[43]. En lo aquí pertinente, la Regla 901 (b) de Evidencia indica:

> b) De conformidad con los requisitos del inciso (a) de esta regla y sin que se interprete como una limitación, son ejemplos de autenticación o identificación los siguientes:
>
> (1) Testimonio por testigo con conocimiento. — Testimonio de que una cosa es lo que se alega.
>
> [...]
>
> (11) Cadena de custodia. — La evidencia demostrativa real puede ser autenticada mediante su cadena de custodia.
>
> (12) Proceso o sistema. — Evidencia que describa el proceso o sistema utilizado para obtener un resultado y que demuestre que el proceso o sistema produce resultados certeros.
>
> (13) Récord electrónico. — Un récord electrónico podrá autenticarse mediante evidencia de la integridad del sistema en el cual o por el cual los datos fueron grabados o almacenados. La integridad del sistema se demuestra a través de evidencia que sustente la determinación que en todo momento pertinente el sistema de computadoras o dispositivo similar estaba operando correctamente o en caso contrario, el hecho de que su no operación correcta no afectó la integridad del récord electrónico.
>
> (14) Correo electrónico. — Un correo electrónico podrá autenticarse mediante evidencia de la integridad del sistema en el cual o por el cual fue creado, enviado o recibido.
>
> [...]

**-F-**

La concesión de honorarios de abogado está regulada por la Regla 44.1 (d) de Procedimiento Civil de 2009[44]. La misma autoriza

---

[42] Chiesa Aponte, *op. cit.*, pág. 345. Véase *Rosado Reyes v. Global Healthcare*, 205 DPR 796, 812-817 (2020).

[43] 32 LPRA Ap. VI, R. 901(b). Estos medios son suficientes, pero no necesarios para autenticar la evidencia. Chiesa Aponte, *op. cit.*, pág. 347.

[44] 32 LPRA Ap. V, R. 44.1 (d).

al Tribunal a imponer honorarios de abogado cuando una parte o su abogado procede con temeridad o frivolidad[45].

De esta manera, la imposición o concesión de honorarios de abogado no procede en todos los casos. Depende, pues, de la determinación discrecional que haga el tribunal en torno a si la parte perdidosa o su abogado, actuaron con temeridad o frivolidad, o de la existencia de una ley especial[46]. Nuestro Alto Foro ha puntualizado que: "Sin duda, para reclamar honorarios de abogado y los intereses presentencia *es imprescindible* que se haya actuado con temeridad durante el trámite judicial[47].

La *temeridad* se define como aquella conducta que hace necesario un pleito que se pudo evitar, que lo prolonga innecesariamente o que obliga que la otra parte incurra en gestiones evitables[48]. Sobre este particular, nuestro más Alto Foro ha expresado también que "[l]a temeridad es una actitud que se proyecta sobre el procedimiento y que afecta el buen funcionamiento y la administración de la justicia"[49].

Por otro lado, la frivolidad se define como "aquello que no tiene razón de ser, sin méritos, sin peso ni lógica alguna"[50]. Sólo lo claramente irrazonable o inmeritorio debe dar paso a una determinación de frivolidad por un tribunal apelativo[51].

En *Feliciano Polanco v. Feliciano González,* 47 DPR 722, 730 (1999), el Tribunal Supremo de Puerto Rico indicó que "[a] modo de ejemplo, constituyen actos temerarios los siguientes:

> [c]uando el demandado contesta la demanda y niega su responsabilidad total, aunque la acepte posteriormente; cuando se defiende injustificadamente de la acción que se presenta en su contra; cuando no admite francamente su responsabilidad limitada o parcial, a pesar de creer que la

---

[45] *Pérez Rodríguez v. López Rodríguez et al.*, 210 DPR 163 (2022); *SLG González-Figueroa v. SLG et al.,* 210 DPR 138 (2022).
[46] *Íd.; Ortiz Valle v. Panadería Ricomini,* 210 DPR 831 (2022).
[47] *SLG González-Figueroa v. Pacheco Romero, supra,* pág. 148.
[48] *Íd; SLG González-Figueroa v. SLG et al., supra,* pág. 148; *Marrero Rosado v. Marrero Rosado,* 178 DPR 476, 504 (2010).
[49] *Jarra Corp. v. Axxis Corp.*, 155 DPR 764, 779 (2001).
[50] *Depto. Rec. v. Asoc. Rec. Round Hill,* 149 DPR 91, 100 (1999).
[51] *Íd.*

única razón que tiene para oponerse a la demanda es que la cuantía es exagerada; cuando se arriesga a litigar un caso del que prima facie se desprende su negligencia; o cuando niega un hecho que le consta ser cierto."

El propósito de la imposición de honorarios de abogado en casos de temeridad es "establecer una penalidad a un litigante perdidoso que, por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconveniencias de un pleito"[52].

Además, la imposición de honorarios de abogado tiene como objetivo disuadir la litigación innecesaria y alentar las transacciones mediante la imposición de sanciones a la parte temeraria para compensar los perjuicios económicos y las molestias sufridas por la otra parte[53]. Nuestro más Alto Foro ha dispuesto que, la facultad de imponer honorarios de abogados es la mejor arma que ostentan los tribunales para gestionar de forma eficaz los procedimientos judiciales y el tiempo de la administración de la justicia, así como para proteger a los litigantes de la dilación y los gastos innecesarios[54].

La determinación sobre si una parte ha procedido con temeridad descansa en la sana discreción del tribunal sentenciador y no será variada en apelación a menos que se demuestre que éste ha abusado de su discreción[55]. Tampoco será variada la partida concedida a menos que resulte ser excesiva, exigua o constituya un abuso de discreción[56].

---

[52]*Andamios de PR v. Newport Bonding,* 179 DPR 503, 520 (2010); *Pérez Rodríguez v. López Rodríguez, supra*, pág. 193; *SLG González-Figueroa v. SLG et al., supra*, págs. 148-149; *Fernández v. San Juan Co.,* Inc., 118 DPR 713, 718 (1987).
[53] *Fernández v. San Juan Cement Co., Inc.*, 118 DPR 713, 718-719 (1987).
[54] *SLG González-Figueroa v. SLG et al., supra*, pág. 149.
[55] *Pérez Rodríguez v. López Rodríguez, supra*, pág. 193; *SLG González-Figueroa v. SLG et al., supra*, pág. 150.
[56] *Feliciano Polanco v. Feliciano González, supra*, a las págs. 728-729.

**III.**

En su recurso, el BPPR arguye que erró el TPI al excluir prueba admisible en evidencia que fue debidamente identificada y autenticada.

Procedemos a discutir los señalamientos de error del primero al quinto de forma conjunta por estar estrechamente relacionados con la aplicación de las Reglas de Evidencia. Por último, discutiremos el sexto señalamiento de error referente a la imposición de honorarios por temeridad.

En cuanto a los señalamientos de error sobre la aplicación de las Reglas de Evidencia y la exclusión de prueba, el BPPR aduce que durante el juicio realizó una oferta de prueba de dos documentos marcados como Identificación 1 y 2 de la parte apelante, respectivamente. Arguye que para la autenticación se presentó como testigo a la señora Vilches Núñez, empleada del BPPR, quien tenía amplio conocimiento sobre los documentos que se preparan en el curso ordinario de los negocios y los mismos estaban impresos directamente de los sistemas del banco. No obstante, señala que el TPI excluyó erróneamente los documentos por constituir prueba de referencia, aun cuando el BPPR presentó una objeción oportuna y fundamentada.

Por su parte, la señora Doitteau Cofresí arguye que el BPPR no superó la etapa de autenticación de la prueba bajo el palio de la Regla 901 de las Reglas de Evidencia, *supra*, debido a que el testimonio de la señora Vilches Núñez no era suficiente para autenticar la prueba. Añade que el BPPR debió presentar el testimonio del custodio de los documentos marcados como Identificación 1 y 2 de la parte apelante, el testimonio de alguna otra persona cualificada o mediante una certificación que cumpla con las disposiciones de la Regla 902(k) de Evidencia o con algún estatuto que permita dicha certificación. Asimismo, sostiene que, debido a

que el BPPR pretendía ofrecer en evidencia documentos que constituyen récord electrónico, se debía evidenciar mediante el testimonio de su testigo el proceso o sistema mediante el cual se produjeron los documentos, así como evidencia de la integridad del sistema. Además, la señora Doitteau Cofresí alega que el BPPR no proporcionó la totalidad del contrato de cuentas de depósito, aun cuando fue solicitado tanto en el descubrimiento de prueba como durante la vista en su fondo. Por último, aduce que las determinaciones de hecho y conclusiones de derecho no deberían dejarse sin efecto a menos que el BPPR demostrara que eran claramente erróneas, lo cual no hizo.

Tras examinar minuciosamente la transcripción de la prueba oral estipulada, encontramos que durante la vista en su fondo el BPPR presentó un documento que fue marcado como Identificación 1, el cual contenía dieciocho (18) folios que fueron identificados desde el 1-A al 1-R. Veamos.

Según surge del directo realizado por la representante legal de BPPR, Lcda. Patriscia M. Correa Ramírez (Lcda. Correa Ramírez), la señora Vilches Núñez manifestó lo siguiente:

> P. Testigo, ¿reconoce el documento que se le está mostrando?
> R. Sí
> P. Le pregunto, ¿por razón de qué reconoce usted ese documento?
> R. Esto constituye una de las pantallas del sistema al que nosotros tenemos acceso en el Banco Popular.
> P. Bien. Le pregunto, ¿en qué se diferencia, si en algo, ese documento de los que constan en los registros de Banco Popular?
> R. No, ahora mismo no hay diferencia.
> P. Honorable, estaríamos solicitando que se marque con Exhibit[57].

La representación legal de la señora Doitteau Cofresí, Lcdo. Luis A. Fernández Domenech (Lcdo. Fernández Domenech), objetó que el documento se marcara como Exhibit 1[58], y la jueza del TPI le permitió realizar un *voir dire*[59]. El Lcdo. Fernández Domenech

---

[57] Transcripción de la Prueba Oral (TPO), págs. 14-15.
[58] TPO, pág. 15.
[59] TPO, pág. 15.

realizó un extenso *voir dire,* el cual tuvo como fin último cuestionar la cadena de custodia del documento. Además, razonó que la testigo del BPPR no tenía conocimiento sobre el origen de los documentos ni tampoco era custodia de estos, por tanto, solicitó que no se admitiera el documento marcado como Identificación 1 de la parte apelante[60]. El representante legal del señor Doitteau Cruz, Lcdo. David Rodríguez Vega (Lcdo. Rodríguez Vega), realizó dos preguntas respecto al contacto que tuvo la testigo con la prueba. Luego, el TPI permitió a la representación legal del BPPR un turno de rectificación.

LCDA. PATRISCIA M. CORREA RAMÍREZ:
Doña Doris, le pregunto, ¿esos documentos forman parte del récord de negocios del Banco Popular?

LCDO. DAVID RODRÍGUEZ VEGA:
Objeción, su Señoría, sugestiva.

HONORABLE JUEZ:
No, no, estamos... estaba en la rectificación para ver si se admite el documento.

POR LA LCDA. PATRISCIA M. CORREA RAMÍREZ:
P: ¿Forma...? Nuevamente, le pregunto, ¿forma parte de los récords de negocio del Banco Popular?
R: Sí, forma parte.
P: ¿De dónde surgen o de dónde salen estos documentos?
R: Del sistema administrativo. Son dos sistemas distintos [Ininteligible] pero son del sistema administrativo que nosotros tenemos acceso.
P: ¿Y usted está familiarizada, en su carácter personal, con ese sistema?
R: Sí.
P. Honorable, solicitaríamos que se marque como exhibit.

LCDO. LUIS A. FERNÁNDEZ DOMENECH:
No. Su Señoría, tenemos objeción. Vuestro Honor, fíjese, las preguntas que yo le hice vienen directamente de la jurisprudencia, de cómo es, verdad, que se acredita la integridad del sistema. La Regla 901 para récord electrónico tiene dos requisitos: que se acredite la integridad del sistema y que en todo momento, en todo momento pertinente el sistema de computadora, de dispositivo similar, está operando correctamente. A esa pregunta en particular, la testigo que está aquí dijo que no sabía, no puede decirlo porque ella vino en contacto con eso los otros días, cuando se asignó para juicio.
[...][61]

LCDA. PATRISCIA M. CORREA MARTÍNEZ:
Honorable, entendemos que la testigo declaró que los récords fueron grabados en el curso ordinario de los negocios. Ellos nunca han planteado el que los récords estén... Eso sale de la Regla 901, el L, que habla de récords

---

[60] TPO, págs. 23-24.
[61] TPO, págs. 31-33.

electrónicos, dice que "el récord electrónico se presume auténtico".

HONORABLE JUEZ:
Sí, pero...

LCDA. PATRISCIA M. CORREA MARTÍNEZ:
Y ella ha declarado que el récord se toma por los sistemas del banco y nadie interviene con ellos, y que ella reconoce los documentos porque trabaja con ellos todos los días.
[...]⁶²

HONORABLE JUEZ:
El Tribunal no va a admitir esos documentos. Si al final quiere hacer el abogado un ofrecimiento de prueba, lo puede hacer.
[...]⁶³

HONORABLE JUEZ:
No se pudo acreditar que es auténtico, porque solamente la testigo pudo declarar con relaciona al manejo de ellos desde el 2019 en adelante. O sea, cuando le informaron a ella que el caso estaba para juicio.

LCDA. PATRISCIA M. CORREA MARTÍNEZ:
O sea, que, ¿lo que se está declarando, básicamente, es que el documento no es genuino? ¿Eso es lo que está levantando la parte...?

HONORABLE JUEZ:
No es... no es que no sea gen...

LCDO. LUIS A. FERNÁNDEZ DOMENECH:
Que no es admisible.

HONORABLE JUEZ:
No es admisible, porque falta uno de los elementos necesarios para que sea admisible, que es la autenticidad. Es pertinente, pero no es auténtico. No es que no sea genuino. Hay una diferencia entre un documento que no es genuino y un documento que no cumple con el propósito de autenticidad.
Fíjese, que todo documento es prueba de referencia. Tiene que cumplir con un requisito en particular, aun cuando se trata de un récord de negocio, el ofrecimiento de prueba, para que pase como un documento admisible.
[...]⁶⁴

LCDA. PATRISCIA M. CORREA MARTÍNEZ:
Y, Honorable, antes de continuar con la presentación, queremos que surja del récord, verdad, que nosotros **hemos levantado nuestra objeción a la no admisibilidad del documento porque entendemos que cumple con los récords de negocios.** Para propósitos de cualquier apelación, que surja claro del récord que está el planteamiento[.]
[Ininteligible].

HONORABLE JUEZ:
Claro que sí. Eso es un... eso, en estricto derecho se llama "ofrecimiento de prueba ofrecida y no admitida por el Tribunal". ¿Eso es lo que está haciendo la licenciada?

---

⁶² TPO, págs. 34-35.
⁶³ TPO, pág. 35.
⁶⁴ TPO, págs. 36-37.

[...][65]

Referente al documento marcado como Identificación 1, la representación legal de la señora Doitteau Cofresí argumento que es aplicable el caso *Rosado Reyes v. Global Healthcare,* 205 DPR 796 (2020)[66]. El TPI entendió que la Identificación 1 es pertinente. No obstante, razona conforme a la norma jurídica relacionada con la autenticación y admisibilidad, y dispone que la Identificación 1 no es admisible por no haberse autenticado.

En *Rosado Reyes v. Global Healthcare, supra,* el Tribunal Supremo de Puerto Rico reiteró que una vez se establece que la evidencia propuesta es pertinente, esta tiene que cumplir con el requisito de autenticación. A su vez, nuestra Alta Curia dispuso que, el requisito de autenticación se cumple con la presentación de evidencia suficiente para sostener una determinación de que la materia en cuestión es lo que la persona proponente sostiene[67]. Añade el Tribunal Supremo, que:

> La Regla 901(B)(1) de Evidencia, *supra,* también permite **autenticar evidencia mediante el testimonio de un testigo con conocimiento a los efectos de que "una cosa es lo que se alega**". En este contexto, ello significa que el tribunal puede autenticar una impresión de una página web si un testigo declara en sala o certifica mediante declaración jurada que: (1) ingresó la dirección de Internet ("URL address") que surge de la impresión de la página web en la fecha y hora indicadas; (2) ingresó a la página web y revisó su contenido, y (3) el contenido de la impresión ("printout") refleja fiel y exactamente lo que el testigo percibió en la página web[68].

Por otro lado, en cuanto a las formas de autenticación, la profesora Neptune Rivera expresa que:

> Cabe destacar que no existe una manera única de autenticación ya que las partes tienen libertad probatoria para escoger la manera en que presentarán la prueba. Por esa razón, las Reglas de Evidencia de Puerto Rico de 2009 contienen ejemplos no taxativos sobre cómo autenticar en la Regla 901(b), a saber: (a) testimonio por testigo con conocimiento; (b) autenticidad mediante evidencia de la letra; (c) identificación de voz; (d) conversaciones telefónicas; (e) escritos antiguos o compilación de datos; (f) escritos en

---

[65] TPO, págs. 37-38.
[66] TPO, págs. 33-34.
[67] *Rosado Reyes v. Global Healthcare, supra,* pág. 812.
[68] *Íd.,* págs. 816-816, citando a P. Grimm y otros, *Authenticating Digital Evidence,* 69 Baylor L. Rev. 1, 26 (2017).

contestación; (g) contenido de escritos; (h) autenticación mediante admisión; (i) testamento; (j) características distintivas; (k) cadena de custodia; (l) proceso o sistema; (m) récord electrónico; (n) correo electrónico, y (o) métodos provistos por ley o reglamento[69].

Contrario con lo resuelto por el TPI, entendemos que, en el caso de autos, el BPPR autenticó los documentos que componen la Identificación 1, conforme a lo dispuesto en *Rosado Reyes v. Global Healthcare, supra*[70]. Específicamente, la autenticación de impresiones ("printouts") de páginas web con el testimonio de un testigo con conocimiento[71]. Sin embargo, el foro primario excluyó la Identificación 1 a base de una interpretación errada de la normativa jurisprudencial, a pesar de que el BPPR presentó una objeción oportuna y realizó una oferta de prueba.

No obstante, este Foro ha de evaluar si la exclusión de la Identificación 1 es perjudicial y el resultado hubiese sido diferente. Al evaluar la prueba en su totalidad, y a tenor con el derecho reseñado, colegimos que el error cometido no es perjudicial, puesto que, de este no haberse cometido, el resultado hubiese sido el mismo. Consecuentemente, concluimos que, a pesar de que el foro primario incidió al excluir la Identificación 1, este error no tiene el efecto de invalidar el dictamen apelado.

Por otro lado, al evaluar la exclusión del documento marcado como Identificación 2, surge de la transcripción de la prueba oral lo siguiente:

LCDA. PATRISCIA M. CORREA MARTÍNEZ:
    Se le mostró el documento…

HONORABLE JUEZ:
    La Identificación 2, para aclarar el récord.

POR LA LCDA. PATRISCIA M. CORREA MARTÍNEZ:
La Identificación 2.

---

[69] V. I. Neptune Rivera, *Reglas de admisibilidad de prueba digital*, Reflexiones, https://sistemasjudiciales.org/wp-content/uploads/2021/10/11.-SJ24.-Neptune-Rivera.pdf.
[70] *Rosado Reyes v Global Healthcare, supra*, pág. 817, citando a *Buzz Off Insect Shield, LLC v. S.C. Johnson & Son, Inc.*, 606 F. Supp. 2d 571, 594 (M.D.N.C 2009) y *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 213 F. Supp. 2d 1146, 1154 (2002).
[71] *Rosado Reyes v. Global Healthcare, supra,* págs. 816-817.

P: Testigo ¿reconoce usted el documento que se le está mostrando?
R: Reconozco el documento.
P: ¿Por razón de qué lo reconoce?
R: Fue parte de los documentos del expediente.
P: ¿Se familiarizó usted con ese documento, con anterioridad a este caso?

[…][72]

LCDO. DAVID RODRÍGUEZ VEGA:

[…]
Este documento que se ha marcado como Identificación 2, se titula "Anejo al Contrato De Cuentas De Depósito", y en la parte de debajo de ese documento dice: "Los términos y condiciones antes expuestos y contenidos en el contrato de cuentas de depósito, del cual este anejo forma parte, constituyen la totalidad del acuerdo entre el banco y el depositante".
Esto quiere decir que esto no es… esto es parte de un documento. Es un anejo de un documento de contrato de cuenta de depósito, que no se ha presentado aquí. Y conforme a la Regla 108, yo estoy solicitando que se me provea el contrato de cuenta de depósito, como lo dice la Regla 108, o que este documento no sea admitido en evidencia. Y esta regla no tiene excepciones, Juez. Esta regla no tiene ninguna excepción, es así de expresa y sin excepciones. Va a presentar parte de un documento, y si la parte contraria pide el documento completo y no se presenta, no es admisible. Regla 108 de Evidencia.

[…][73]

HONORABLE JUEZ:
No se admite Adelante, licenciada Correa. Puede hacer un ofrecimiento de prueba. Así que…

LCDA. PATRISCIA M. CORREA MARTÍNEZ:
Honorable, estaremos haciendo un también un ofrecimiento de prueba, igual estaríamos pidiendo, Honorable, reconsideración basado en las contestaciones que dio la dama a las preguntas para la Identificación 2. Estaríamos solicitando una reconsideración para que se admita la Identificación 1, que se había conversado anteriormente.[74]

HONORABLE JUEZ:
A la reconsideración, no ha lugar; y en cuanto al ofrecimiento de prueba, hágalo en ese momento para que quede consignado en el récord.

LCDA. PATRISCIA M. CORREA MARTÍNEZ:
Se estaría ofreciendo en prueba la Identificación número 2 de la parte demandante, Identificación número 1. La número 2 es el anejo al contrato y la número 2 era el documento de lo del banco…[75]

---

[72] TPO, págs. 38-39.
[73] TPO, págs. 43-44.
[74] TPO, pág. 45.
[75] TPO, págs. 45-46.

En vista de lo anterior, colegimos que el TPI no erró al aplicar la Regla 108 de las Reglas de Evidencia[76] y excluir la Identificación 2. Fíjese que, la objeción del Lcdo. Rodríguez Vega es oportuna y fundamentada. Conforme al derecho reseñado, la Regla 108 de Evidencia, *supra*, provee para peticiones como la que se nos muestra en el caso de autos, en cuanto a que se presente la totalidad de alguna evidencia presentada o algún documento suplementario que facilite la comprensión de la prueba. Dado a que el BPPR no presentó en su totalidad el contrato de la cuenta de depósito solicitado por el Lcdo. Rodríguez Vega, concluimos que el BPPR, en efecto, incumplió con la Regla 108 de Evidencia, *supra*. En consecuencia, este señalamiento de error no fue cometido.

Finalizado el desfile de la prueba del BPPR, el representante legal de la señora Doitteau Cofresí argumentó un *non-suit*, del cual se desprende lo siguiente:

> [...]
>
> LCDO. LUIS A. FERNÁNDEZ DOMENECH:
> Bien. Su Señoría, habiendo sometido la parte demandante su caso, nosotros vamos a solicitar muy respetuosamente una determinación de *non-suit*, desestimación por *non-suit*, en lo que a nuestra representada, Ysis Doitteau, respecta.
> En este caso, Su Señoría, el estado de derecho nuestro es que la solidaridad no se presume. No solo eso, sino que la solidaridad de deuda tiene que demostrarse y tiene que provenir de una relación contractual, y una relación contractual en la cual la solidaridad se pacte expresamente en el contrato de que se trata. Y aquí, en este caso Su Señoría, nosotros tenemos ausencia total de prueba. Ausencia total de prueba, de que mi cliente haya firmado algún contrato o se haya obligado contractualmente a asumir solidariamente una deuda sobre una línea de crédito que ni si quiera se pudo establecer aquí en qué momento se solicitó. Es ausencia total de prueba lo que hay aquí.
>
> [...][77]
>
> LCDA. PATRISCIA M. CORREA MARTÍNEZ:
> Honorable, nuestra posición en este caso es que obviamente, la prueba puede ser documental como testifical. La testigo declaró que la deuda existía, quiénes eran los responsables. Y a pesar de que la parte demandada o la codemandada Ysis Doitteau, niega firmar, ella misma fue impugnada con un documento en el cual surge su firma, en una fecha en que ella ya no era menor de edad, incluso era

---

[76] 32 LPRA Ap. VI, R. 108.
[77] TPO, pág. 118.

abogada revalidada con conocimiento pleno del Derecho y con una fecha de 2015... de 2010, perdón, ya siendo ella abogada, donde surge su firma como codepositante. Nosotros entendemos que no tiene que haber más documentación. A parte de que lo que se ha presentado es suficiente para este Tribunal emita una determinación.[78]

LCDO. LUIS A. FERNÁNDEZ DOMENECH:
        Juez, para aclarar el récord, mi cliente, sentada ahí, no admitió responsabilidad sobre la línea a crédito...

HONORABLE JUEZ:
Solidaridad.

LCDO. LUIS A. FERNÁNDEZ DOMENECH:
Sí, solidaridad.[79]

El TPI se reservó el fallo y, posteriormente, mediante la *Sentencia Parcial* aquí impugnada, resolvió que:

> De conformidad con lo antes indicado, bajo los hechos probados y la ley aplicable, y ante la ausencia total de prueba sobre la existencia de solidaridad, y no teniendo duda de que la parte demandante no tiene derecho a remedio alguno en cuanto a esta codemandada, este Tribunal declara con lugar la solicitud de desestimación contra la prueba (*non suit*), presentada por la codemandada Ysis Doitteau y en consecuencia desestima con perjuicio la demanda de epígrafe en cuanto a ésta. Se le impone a la parte demandante el pago de $1,500.00 en concepto de honorarios de abogado por temeridad[80].

Precisa tomar en cuenta que las Reglas de Evidencia tienen como propósito principal el descubrimiento de la verdad en todos los procedimientos judiciales[81]. Para que un tribunal apelativo pueda dejar sin efecto la determinación de admisión o exclusión de determinada prueba, el apelante debe cumplir con la Regla 105 de Evidencia, *supra.* La misma dispone, en parte, que como regla general no se dejará sin efecto una determinación de admisión o exclusión errónea de evidencia, ni se revocará por ello sentencia o decisión alguna, a menos que la parte perjudicada hubiere satisfecho los requisitos de objeción, fundamento u oferta de prueba establecidos en la Regla 104 de Evidencia, *supra,* sobre admisión o exclusión errónea de evidencia. La normativa jurídica dispone que

---

[78] TPO, págs. 121-122.
[79] TPO, pág. 122.
[80] Apéndice del recurso, págs. 137-138.
[81] Regla 102 de Evidencia, 32 LPRA Ap. VI, R. 102; *Pueblo v. Pérez Santos*, 195 DPR 262 (2016).

tampoco se dejará sin efecto si el Tribunal que considera el señalamiento estima que la evidencia excluida es un factor decisivo o sustancial en la sentencia cuya revocación se solicita[82].

Recordemos que la solidaridad en los contratos no se presume; existirá cuando la ley o el propio contrato indiquen que los deudores son solidariamente responsables[83]. En el presente caso, el BPPR no presentó como prueba el Contrato de Cuenta de Depósito, el cual establezca que la señora Doitteau Cofresí era deudora solidaria, ni tampoco argumentó sobre alguna ley que impusiera la solidaridad. De un análisis ponderado de la transcripción de la prueba oral estipulada, nos percatamos que la exclusión de la Identificación 1 no acarrea revocación; a saber, revisados los documentos incluidos en el expediente apelativo, no surge que se pueda determinar la existencia de solidaridad entre el señor Doitteau Cruz y la señora Doitteau Cofresí.

El BPPR razonó que no era necesaria documentación adicional para evidenciar solidaridad porque la señora Doitteau Cofresí declaró en el juicio y, a preguntas de la abogada, ésta reconoció la existencia de la multicuenta, así como haber firmado como "codepositante". Sin embargo, no coincidimos con la interpretación y análisis presentada por el BPPR. Conforme al derecho esbozado, la solidaridad no se presume, en nuestro ordenamiento, requiere que surja de forma clara y expresamente establecida, lo cual no pudo demostrar el BPPR.

En síntesis, colegimos que el TPI cometió los errores primero al quinto al excluir la Identificación 1. Sin embargo, como mencionáramos previamente, la exclusión de la Identificación 1 no es perjudicial porque el resultado hubiese sido el mismo. Con

---

[82] *F.D.I.C. v. Caribbean Mktg. Ins. Agency*, 123 DPR 247 (1989); *S.J. Credit, Inc. v. Ramírez*, 113 DPR 181 (1982).
[83] *Presidential v. Transcaribe*, 186 DPR 263, 287 (2012).

relación a la Identificación 2, los errores primero al quinto no fueron cometidos por el foro primario.

Finalmente, procedemos a atender el sexto error señalado por el BPPR, referente a la imposición de honorarios de abogado por temeridad. Surge de la *Sentencia Parcial* apelada que el TPI condenó al BPPR al pago de una suma de $1,500.00 por concepto de honorarios de abogados por temeridad.

Según expusimos, la temeridad es aquella conducta que promueve un pleito innecesariamente o que obliga a una parte a envolverse en una acción que pudo haberse evitado. Así, el tribunal cuenta con discreción para imponer honorarios de abogado por temeridad. Evaluada la prueba testifical, determinamos que el TPI no abusó de su discreción cuando le impuso al BPPR el pago de $1,500.00 en honorarios de abogado por temeridad. Por tanto, concluimos que el sexto error señalado por la parte apelante no fue cometido.

## IV.

Por los fundamentos antes expuestos, **confirmamos** el dictamen apelado.

En cuanto al señor Doitteau Cruz, dejamos sin efecto la paralización, ordenamos la continuación de los procedimientos y, en consecuencia, declaramos Ha Lugar la *Solicitud de Desestimación* presentada ante este foro, por dicha parte, el 22 de abril de 2024.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones